EDWARD RODE v. RALPH PHELPS, JR., TREASURER, OF WAYNE COUNTY.

*Constitutional law—Liquor law of 1889—Legislative journals.*

1. Act No. 213, Laws of 1889, known as the "New Liquor Tax Law," as approved by the Governor, and published, was never passed by the Legislature, as shown by an examination of the legislative journals, and is null and void, leaving the liquor law of 1887 in force.

2. The courts will take cognizance of the journals of the Legislature, and look into them, for the purpose of determining whether the methods of the Constitution have been followed in the passage of laws; it being considered that the safety and permanency of our institutions will be best promoted by so doing. *Green v. Graves*, 1 Doug. 351; *People v. Supervisor*, 16 Mich. 254; *Attorney General v. Joy*, 55 Id. 94; *Callaghan v. Chipman*, 59 Id. 617; *Attorney General v. Rice*, 64 Id. 385; *People v. McElroy*, 72 Id. 446; *Sackrider v. Supervisors*, 79 Id. 59.

*Mandamus.* Submitted April 29, 1890. Denied April 29, and opinion filed May 9, 1890.

Relator applied for *mandamus* to compel the respondent to receive the tax of $300 provided for by the liquor law of 1887, and issue a receipt therefor, on the ground that the law of 1889 was unconstitutional. The facts are stated in the opinion.

*F. A. Baker* (*George F. Robison,* of counsel), for relator, contended:

1. The courts take judicial notice of the legislative journals, and have the power to look into the journals for the purpose of determining whether an act has been passed and approved in accordance with the requirements of the Constitution; citing *Green v. Graves,* 1 Doug. 351; *People v. Mahaney,* 13 Mich. 492; *People v. Supervisor,* 16 Id. 254; *Attorney General v. Joy,* 55 Id. 94; *Callaghan v. Chipman,* 59 Id. 617; *Attorney General v. Rice,* 64 Id. 385; *People v. McElroy,* 72 Id. 446; *State v. Deal,* 24 Fla. 293; *Jones v. Hutchinson,* 43 Ala. 721; *Moody v. State,* 48 Id. 115; *Moog v. Randolph,* 77 Id. 597; *Sayre v. Pollard,* Id. 608; *Smithee v. Campbell,* 41 Ark. 471; *Judicial Opinion,* 35 N. H. 579; *Fordyce v. Godman,* 20 Ohio St. 1; *Gardner v. Collector,* 6 Wall. 499; *Sherman v. Story,* 30 Cal. 253.

*B. W. Huston,* Attorney General, for the respondent.

Morse, J. This case involves the constitutionality of Act No. 213, Laws of 1889, known as the "New Liquor Tax Law."

Under the liquor tax law of 1887, the annual tax upon "the business of selling only brewed or malt liquors at wholesale or retail" was $300. Laws of 1887, p. 446. The law of 1889 fixes the tax "upon the business of selling malt, brewed, fermented, or vinous liquors at wholesale, and not at retail," at $500, and "upon the business of selling spirituous, intoxicating, malt, brewed, fermented, or vinous liquors at retail, $500." The act of 1889 differs from the law of 1887 in that it makes no distinction in the amount of the tax between the sale of spirituous and intoxicating liquors, and the sale of malt, brewed, fermented, and vinous liquors. It makes no difference whether they are sold singly, or both at one place. The tax is the same, to wit, $500.

The relator is a resident of the city of Detroit, engaged in the business of selling malt, brewed, and fermented liquors at retail at 107 Gratiot avenue. Intending to continue

the business for the year 1890, on April 16, 1890, he tendered to Ralph Phelps, Jr., the county treasurer of Wayne county, the sum of $300, with an affidavit that he was then engaged in said business, and that he intended to engage in the same business, at the same place, from May 1, 1890, to April 30, 1891, and requested the said county treasurer to accept said $300, and to issue a receipt to said relator, under the provisions of Act No. 313, Laws of 1887, for the business of selling malt, brewed, or fermented liquors at retail for the year commencing May 1, 1890. The county treasurer refused to accept said money, or to issue said receipt, on the ground that the act of 1889 was in force, and that under said act the retail tax was fixed at $500 upon the business of selling such liquors.

It is claimed by the relator that the act of 1889 as signed by the acting Lieutenant Governor and the Speaker of the House, and as approved by the Governor and deposited with the Secretary of State, was never passed by the Legislature, which fact is established by the journals of the two Houses. Upon an examination of such journals, we find, beyond question, that this act was never adopted by both Houses in the shape that it was certified to the Governor and approved by him.

The history of this failure of legislation, in brief, as shown by the journals, is as follows: The bill was introduced in, and finally passed by, the House, and sent to the Senate. The Senate made nine amendments to the bill as it passed the House. Upon its return to the House, these amendments were reported in detail to the House, and spread upon the Journal. The bill, as it came from the Senate, is set out at length and in full in the House Journal, from page 1792 to page 1804, inclusive.

The House refused, upon June 5, 1889, to concur in any of the Senate amendments. House Journal, p. 1818.

Afterwards, two separate committees of conference were appointed to adjust the differences between the two Houses. The second conference committee recommended that the House concur in the first, third, sixth, seventh, eighth, and ninth of the Senate amendments; and, by the subsequent proceedings, these may be considered as properly receiving the concurrence of both Houses, and are found in the act approved by the Governor. In relation to the second, fourth, and fifth of the Senate amendments, the conference committee made certain recommendations compromising and adjusting the differences between the two Houses. The report of this second conference committee was agreed to and adopted by the two Houses, and the bill as so amended was passed by each House. But, in engrossing the bill and presenting it to the Governor, the bill, as originally passed by the House and sent to the Senate, with the nine Senate amendments added thereto as it passed the Senate, was copied, and all the amendments and modifications proposed by said second conference committee and adopted by both Houses were omitted. In this shape the bill was signed by the President of the Senate, or acting Lieutenant Governor, and the Speaker of the House, approved by the Governor, and deposited in the office of the Secretary of State.

It follows that this act, as it now stands upon the statute-book, was never passed by the House, but rejected; and, although it once had the approval of the Senate, that body subsequently adopted the amendments and modifications of the conference committee. So that the act, in fact, as it now reads, was adopted by neither House. These things are plainly apparent from a perusal of the journals, and a comparison of the bill as there recorded, as being passed by both Houses, and the act shows the difference between the two. These differences are:

1. Upon the business of selling spirituous or intoxicating liquors at wholesale, and not at retail, $600 in the bill as passed, when it is $500 in the act as approved.

2. Upon the business of selling spirituous, intoxicating, malt, brewed, fermented, or vinous liquors at wholesale and at retail, $1,100 as passed, and $1,000 in the act as signed by the Governor.

3. Section 3, of the bill, *as passed,* reads as follows:

"SEC. 3. The penal provisions of this act shall not apply to druggists who have a permit to sell any of the liquors enumerated in section one of this act for chemical, scientific, sacramental, medicinal, and mechanical purposes, as provided in this section. The township boards and village and city councils of the respective towns, villages, and cities of this State, upon the written application of any druggist who is, or who employs, a registered pharmacist, may grant to such druggist, if they deem proper, a permit to sell the liquors enumerated in this act for chemical, scientific, sacramental, medicinal, and mechanical purposes, but for no other purposes whatever. The sum to be paid to the township, village, or city for such permit shall be one dollar, which sum shall be due and payable when said permit is granted. Applications for permits shall be made by petition signed and sworn to by the applicant, and filed with the township, village, or city clerk, or recorder, as the case may be, of the township, village, or city in which such druggist proposes to sell intoxicating liquors under the permit applied for, which petition shall state the applicant's name, place of residence, in what business he is then engaged, and in what business he has been engaged for two years next preceding the time of filing petition; that he is, or employs, a registered pharmacist; that he has not been adjudged guilty of violating the law relating to intoxicating liquors within the last two years preceding his application; and that he desires a permit to keep and sell such liquors for chemical, medicinal, sacramental, scientific, and mechanical purposes, and for no other purposes whatever.

"Permits granted under this section shall be for a term ending on the first day of May next ensuing, but such permit may be revoked by the authority granting the same whenever the holder of such permit shall have been adjudged guilty of violating any of the provisions of this act, whether relating to his business as druggist or not. It shall not be lawful for any such druggist, nor for any person whose business consists in whole or in part of the sale of drugs and medicines, directly or indirectly, by himself, his clerk, agent, or employé, at any time, to sell, furnish, give, or deliver any spirituous, intoxicating, malt, brewed, fermented, or vinous liquors, or any mixed liquor, a part of which is spirituous, intoxi-

cating, malt, brewed, fermented, or vinous, to a minor, except for medicinal or mechanical purposes, on the written order of the parent or guardian of such minor, nor to any adult person whatever who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any person when forbidden in writing so to do by the husband, wife, parent, child, guardian, or employer of such person, or by the supervisor of the township, mayor, director of the poor, or any supervisor or alderman of the city, or president or trustee of any village, or superintendent of the poor of the county, in which such person shall reside or temporarily remain, nor to any other person, to be used as a beverage, nor to any person to be drank on the premises, nor to be mixed and drank with any beverage drawn from a soda fountain or other apparatus or device for dispensing aerated or other beverages; but such druggist shall be allowed to sell said liquors for medicinal, chemical, scientific, mechanical, and sacramental purposes only, without the payment of any tax specified in section one, and subject to the following restrictions and conditions:

"Every such dealer in drugs and medicines shall procure from the treasurer of the county in which he is carrying on said business suitable record books, and shall keep the same, in which shall be recorded in ink, by said druggist, his clerk or employé, all the applications for, and sales and gifts of, any spirituous, intoxicating, malt, brewed, fermented, or vinous, or mixed liquors, for any purpose whatsoever, together with the full name or names of the person or persons, applying for such liquor or liquors, as aforesaid, the date of each application, sale, or gift, the amount and kind of liquor applied for and sold and given away to each and every person, and the purpose for which the same was to be used. The aforesaid application shall be filled out by the druggist, his clerk or employé, and countersigned by the druggist, his clerk or employé, and, in case a written or printed, or partly written and partly printed, order be received for any of the aforesaid liquors, such druggist, his clerk or employé, shall attach the same to said record book, in its regular order of receipt and sale, and shall countersign such order the same in all respects as if it were an application as before described.

"Such record book shall be kept in a conspicuous place in said store, and at all times be subject to public inspection. On the first day of May, annually, or within five days thereafter, the druggist shall deliver said record book of applications and sales or gifts to the clerk of the township, village, or city in which the store of such druggist is located, and shall at the same time securely and firmly attach to said record book an affidavit sworn to before some person authorized to administer oaths, which said affidavit shall be signed and sworn to by himself, and shall state that he has not,

and to the best of his knowledge and belief his employés have not, during the preceding year, sold, delivered, furnished, or .given away any of the liquors in this section heretofore mentioned. And said affidavit shall declare that the applications and orders, sales and gifts, of spirituous, intoxicating, malt, brewed, fermented, or vinous, or mixed liquors recorded within the record book to which the affidavit is attached include all the sales or gifts of any such liquors aforesaid, and the full names of the persons to whom sold, together with the purposes to which the same was to be applied, made at the store of the affiant during the year last past, ending on the thirteenth day of May, 18—,. and that the affiants have not sold any liquors as aforesaid to any person or persons to be drank on the premises, nor to be mixed and drank with any beverage drawn from a soda fountain or other apparatus or device for dispensing aerated or other beverages. Said record book shall be placed and remain on file in the office of said township, village, or city clerk, and shall be open to public inspection, and in all courts of law shall be taken as *prima facie* evidence of the applications and sales or gifts therein specified and recorded.

"Any such druggist, clerk, or employé who shall, in any manner or respect, willfully make a false or fraudulent entry or record in any such record book, or neglect to record any sale of liquors made by him, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars, nor more than two hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than ninety days, or by both such fine and imprisonment, in the discretion of the court; and any such druggist who shall, in any manner or respect, willfully make a false or fraudulent affidavit in relation thereto, shall be deemed guilty of perjury, and subject to the pains and penalties therefor; and any person contemplated by this act who shall fail, neglect, or refuse to make return, as provided above, to the township, village, or city clerk, within five days after the time as specified, shall, upon proper conviction before any court of competent jurisdiction, be fined in any sum not less than one hundred nor more than three hundred dollars, or be imprisoned in the county jail not less than thirty nor more than ninety days, or both such fine and imprisonment, in the discretion of the court.

"Any person or persons who shall procure, or attempt to procure, any liquor as mentioned in this act by fraudulent statements or by misrepresentations, shall be deemed guilty of a misdemeanor, and, upon conviction thereof before any court of competent jurisdiction, shall be punished by a fine of not less than fifty nor more than two hundred dollars, or by imprisonment in the county jail not less than thirty nor more than ninety days, or both such fine and imprisonment, in the discretion of the court.

" And it shall be the duty of the Auditor General to prepare record and permit blanks conforming to the provisions of this section, and to furnish the same in proper quantities to the several county treasurers of this State, which said record and permit blanks shall be furnished by the said county treasurers, in proper quantities, to the several dealers in drugs and medicines authorized to do business under the provisions of this section upon application in writing made by said dealer in drugs and medicines.

"And such druggists shall, on or before the first day of May in each year, or before commencing business, execute and file with the county treasurer of the county in which he is carrying on such business a bond, the sufficiency of which shall be determined by the township board of the township or the board of trustees or the council or common council of the village or city in which such business is proposed to be carried on, to the people of the State of Michigan, in the sum of two thousand dollars, with two or more sufficient sureties, who shall be freeholders and residents of the county in which such business is proposed to be carried on, each of whom shall justify in a sum equal to the amount of the bond, over and above all indebtedness, and all exemptions from sale on execution, and all liability on other similar bonds, which bond shall be substantially in the following form:

" Know all men by these presents, that we, ———, as principal, and ——— and ———, as sureties, are held and firmly bound unto the people of the State of Michigan in the sum of two thousand dollars, to the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

" Sealed with our seals, and dated this ——— day of ———, 18—.

" Whereas, the above-named principal proposes to carry on the business of a druggist at ———, in the county of———, and State of Michigan; whereas, the said principal hath covenanted and agreed, and doth hereby covenant and agree, as follows, to wit:

" That he will not, directly, or indirectly, by himself, his clerk, agent, or employé, at any time, sell, furnish, give, or deliver any spirituous, intoxicating, malt, brewed, fermented, or vinous liquor, or any mixed liquor, a part of which is spirituous, intoxicating, malt, brewed, fermented, or vinous, to a minor, except for medicinal or mechanical purposes, on the written order of the parent or guardian of such minor, nor to any adult person whatever who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any person when forbidden in writing so to do by the husband, wife, parent, child, guardian, or employer of such person, or by the supervisor of the township, mayor or director of the poor of the city, or superintendent of the poor of the county, in

which such person shall reside or temporarily remain, and that he will not sell any such liquor to be drank on the premises, nor to be mixed and drank with any beverage drawn from a soda fountain or other apparatus or device for dispensing aerated or other beverages; that he will sell such liquors for chemical, scientific, medicinal, mechanical, and sacramental purposes only, and that he will pay all damages, actual and exemplary, that may be adjudged to any person or persons for injuries inflicted upon him or them, either in person or property or means of support, by reason of his selling, furnishing, giving, or delivering any such liquors contrary to the provisions of this act.

"Now the condition of this obligation is such that if said principal shall well and truly keep and perform all and singular the foregoing covenants and agreements, and shall pay any judgments for actual or exemplary damages which may be recovered against him in any court of competent jurisdiction, and all fines and costs that may be imposed upon him, for violations of this act, then this obligation shall be void and of no effect; otherwise the same shall be in full force and effect.

————————————————————[L. S.]
————————————————————[L. S.]
————————————————————[L. S.]

"Signed and sealed in the presence of
———————————————, ———————————————.

"A new bond shall be required by the county treasurer with whom such bond was originally filed in case of the death, insolvency, or removal of either of the sureties; and it shall not be lawful for any person to sell any of the liquors mentioned in this section, after being notified by the county treasurer to procure a new bond, until said bond shall have been executed and approved by proper authority:

"*Provided*, however, that no new bond shall be required by the county treasurer of any person or persons who have filed a bond, and are doing business under the provisions of this section, until it shall be made to appear to said county treasurer, upon summary hearing, that either of the sureties upon such bond have died, removed, or become insolvent; and such hearing shall not be had until after reasonable notice thereof, stating the time and place of such hearing, shall have been given in writing, by said county treasurer, to the principal or principals on such bond.

"Whenever any druggist shall violate any of the provisions of this section, if there is no specific penalty provided therefor by this act, he shall, on conviction thereof, be deemed guilty of a misdemeanor, and be punished by a fine of not less than one hundred nor more than five hundred dollars, and costs of prosecution, or by imprisonment in the county jail not less than ninety days nor more

than one year, or both such fine and imprisonment in the discretion of the court: *Provided*, that every drug clerk shall, in addition, be responsible for violating the provisions of this act, for his personal act or negligence or violation, subject to the same penalty as proprietors or employers."

See conference report, House Journal, pp. 2202–2209. Conference report adopted—yeas 55, nays 29. House Journal, pp. 2210, 2211.

See conference report, Senate Journal, pp. 1373–1377. Report adopted—yeas 21, nays 6. Senate Journal, page 1378.

It is also shown that the conference committee reported in favor of striking out the following proviso, which is now found in the act as approved and deposited with the Secretary of State:

"*Provided*, that no person, firm, or corporation paying a wholesale tax on the business of selling distilled or spirituous liquors or intoxicating liquors shall be required to pay a tax for selling at wholesale malt, brewed, fermented, or vinous liquors at the same place of business." See House Journal, p. 2209; Senate Journal, p. 1377; Laws of 1889, p. 302 (first proviso).

Thus it will be seen that this act contains a proviso of importance which, the journals of both Houses show, was stricken from the bill before its passage.

A comparison of section 3 of the bill as passed, and section 3 of the act as signed, shows radical differences as to the regulations and restrictions placed upon druggists. The bill as passed provides that druggists must obtain permits from township boards and village and city councils, and sets out the manner and conditions of obtaining such permits, which permits may be revoked by the authority granting them. It also provides different and more stringent regulations as to the keeping of record books, and declares that such books shall, at the end of each year, together with an affidavit, the form of which is prescribed in the bill, be deposited with the township,

village, or city clerk, where they shall remain open to public inspection. One paragraph of the section provides for the punishment, by a fine not less than fifty dollars nor more than two hundred dollars, or by imprisonment in the county jail not less than thirty nor more than ninety days, or both such fine and imprisonment, in the discretion of the court, of any person who procures liquor of a druggist by fraudulent statements or by misrepresentations. The bond is also somewhat different. This provision in the law relative to druggists was one of the most stubbornly contested causes of difference between the two Houses, and between the members of both branches of the Legislature; and it is pretty plainly apparent, from an inspection of the journals alone, that the act as it now stands, containing the provisions of section 3, could not have been passed. These radical differences between the act found upon the statute-book, and the bill as it passed, preclude any idea of attempting to save any portion of the act. It was never passed by the Legislature, and is null and void, leaving the act of 1887 in force.

The Attorney General admits that the law must fail if the Court has power to go behind the certificates of the presiding officers of the two Houses, and the approval of the Governor, and inspect the journals, to ascertain whether the law was actually passed by the Legislature as so certified and approved. We have heretofore uniformly held, in this State, that the courts would take cognizance of the journals of the Legislature, and look into them, for the purpose of determining whether the methods of the Constitution have been followed in the passage of laws, considering that the safety and permanency of our institutions would be best promoted by such holding. *Green v. Graves*, 1 Doug. 351; *People v. Supervisor*, 16 Mich. 254; *Attorney General v. Joy*, 55 Id. 94; *Callaghan v. Chipman*, 59 Id. 617; *Attorney General v.*

*Rice,* 64 Id. 385; *People v. McElroy,* 72 Id. 446; *Sack-rider v. Supervisors,* 79 Id. 59.

This case exemplifies the wisdom of these decisions. If the rule prevailed here which is adopted in some of the states of the Union, that the courts have no power to go behind the authentication of a law by the presiding officers of the Legislature, and the approval of the Governor, to ascertain whether or not it was legally passed, under the requirements of the Constitution, we should always be in danger of having laws upon our statute-books, which, although the courts would be obliged to hold them valid under such a rule, were never passed by the Legislature, and were really created by the carelessness or corruption of some member, clerk, or employé of that body, or perhaps by the interpolation of a member of what is sometimes facetiously called the "Third House," but which is nothing more nor less than an organized, and generally unscrupulous, lobby. The people speak, in the enactment of laws, through the Legislature, acting within the limits of the Constitution; and any holding which would authorize or permit laws, or any part of any law, to be ordained or created in any other way, would be inconsistent with the logic of our free institutions, and dangerous to the safety and security of the liberties of the people. And it is also noticeable, as shown by the brief of the relator, that many of the states which formerly held a different doctrine from that laid down by this Court have since, under constitutions similar to ours, which require that all bills shall be passed by yea and nay votes of record, admitted the right and duty of the courts to go behind the official authentication of the law, and inquire into the manner or methods of its adoption, to ascertain whether or not it was properly and legally passed as required by the con-

stitution.    See *Freeholders v. Stevenson,* 46 N. J. Law, 173; *State v. Mead,* 71 Mo. 266, 270; *People v. Petrea,* 92 N. Y. 128, 139.    As to other states holding with this Court, and not cited in *People v. McElroy,* 72 Mich. 446, see *Jones v. Hutchinson,* 43 Ala. 721; *State v. Deal,* 24 Fla. 293; *Judicial Opinion,* 35 N. H. 579, 52 Id. 622. And in the federal courts, see *Gardner v. Collector,* 6 Wall. 499; *County of San Mateo v. Railroad Co.,* 8 Sawy. 238 (13 Fed. Rep. 722).

It is to be deeply regretted that as important a law as this, covering a subject of great public interest, should, because of the gross carelessness, or worse, of some one, be wiped bodily from the statute-book.    But the courts are not responsible for this; nor can they usurp the functions of legislation, and, by shutting their eyes to the records of legislative doings, declare a law valid that never passed the Legislature, however well authenticated it may be by the certificates of officials.

It seems almost incredible that such a blunder as this could pass unnoticed by so many persons, whose duty it was to see that the bill as passed should go, without change or alteration, into the statutes, when the evidences of such change and alteration are so plain upon the face of the journals of both Houses.    But so it is, and there is no remedy for it.    It will be noticed that every change except the proviso, which was stricken out of the bill as passed, but found in the act as heretofore stated, was made in the interest of the liquor dealer, and yet the attack upon the law in this Court comes from the very class who were to be benefited by the changes.    This, however, is not material to the issue before us, and can have no weight in our determination.

The whole law, as before said, must be decreed void, but we cannot grant the writ of *mandamus* as prayed, because

there is no showing that the bond required by law has been approved and filed as required by the law of 1887; and no costs will be allowed.

We have been greatly aided in our investigation of the journals by the clearly stated and exhaustive brief of the relator's counsel, Mr. F. A. Baker; and we are much indebted to him for the industry shown in research, and the accuracy of his statements of the result of such research.

The other Justices concurred.