The State vs. Wendler.

---

THE STATE vs. WENDLER.

*September 28 — November 24, 1896.*

*Constitutional law: Enactment of statute: Yea and nay vote: Legislative journal: Executive approval.*

[1.  Whether a bill making an appropriation, which after having passed one house by a yea and nay vote is amended in the other upon points not affecting the appropriation, must be again passed by such a vote in the house in which it originated, not determined.]

2.  Where there were two bills before the legislature, 258 A and 258 S, the former relating to change of county seats and the latter a revision of the fish and game laws, it cannot be shown that an entry in the assembly journal that 258 A, giving its title at length, was read a third time and passed, was a clerical error and that 258 S was the bill which was acted on, even though it seems very probable that such a mistake was made, the rule being that the official record must govern when its language is clear and free from doubt and ambiguity.

3.  In order that a law may be legally enacted it is absolutely essential that the governor shall approve the same bill which the legislature has passed.

4.  Thus, where it is admitted that if any bill passed both houses it was the original engrossed bill with certain amendments adopted after a conference, two enrolled bills were presented to the governor, the first of which did not correspond with the engrossed bill but had incorporated in it the conference amendments, and the second was a correct transcript of the engrossed bill without the amendments.  The governor approved both, and they were both published according to law.  *Held*, that the bill which passed the legislature was never approved by the governor and never became a law.

REPORTED from the county court of Winnebago county: C. D. CLEVELAND, Judge.

*Emil Wendler* was prosecuted before the county court of Winnebago county for catching fish in the waters of Lake Winnebago with a gill net, contrary to the provisions of subd. 1, sec. 35, ch. 221, Laws of 1895. Before trial on the merits, he moved to quash the complaint, on the ground that ch. 221, aforesaid, was not a valid law, and never passed the legislature. He also filed a plea in abatement to the same effect. The issue arising upon the plea in abatement was tried, the defendant offering in evidence copies of two bills on file in the office of the secretary of state, the first being entitled "Amended and corrected substitute for No. 258 S, a bill to revise, amend, and consolidate the laws of the state relating to game and its preservation, fish and the preservation and propagation thereof;" the second being entitled "A bill to revise, amend and consolidate the laws of the state relating to game and its preservation, fish and the preservation and propagation thereof." Each document is duly certified by the secretary of state as having been "compared with the original bill, and to be a true copy thereof, and of the whole of such original." The defendant also offered in evidence the senate and assembly journals for the session of 1895, and called attention to all entries in either journal relating to bill No. 258 S. The motion to quash was denied, and the plea in abatement overruled, and the defendant excepted; whereupon the defendant pleaded "Not guilty," and the trial proceeded on the merits. A verdict of guilty was rendered, whereupon the defendant moved to set aside the verdict and for a new trial, and at the same time moved in arrest of judgment; both motions being founded on the same ground as the plea in abatement. Thereupon the county judge reported the case to this court, and submitted to the court the following questions for decision: "First question. Did ch. 221, Laws of 1895, pass both houses of the legislature,

so as to become a valid law? Second question. Was the law known as ch. 221, Laws of 1895, ever enacted and passed by the legislature of the state of Wisconsin? Third question. Can any judgment be pronounced or rendered upon said verdict of guilty in this action? Fourth question. Can the defendant be sentenced under any of the provisions of ch. 221, Laws of 1895? Fifth question. Did the court err in refusing to grant defendant's motion to quash the complaint, and in overruling the defendant's plea in abatement? Sixth question. If defendant's motion in arrest of judgment should be granted, can defendant properly be tried again for said offense charged against him?"

For the plaintiff there was a brief by *C. E. Whelan*, Special Counsel State Fish & Game Warden; the *Attorney General; J. L. Erdall*, Assistant Attorney General; and *H. B. Harshaw*, of counsel; and oral argument by *Mr. Erdall, Mr. Whelan*, and *Mr. Harshaw*. They contended, *inter alia*, that, the senate having passed the engrossed bill by a yea and nay vote, the constitution was satisfied. It would be belittling legislative action to insist that upon every minor amendment to the bill the solemnity of the roll call should be invoked. This is the weapon of obstruction and delay, not of enlightened law-making. *People ex rel. Scott v. Chenango Co.* 8 N. Y. 317; *State v. Brown*, 33 S. C. 152; *State ex rel. Att'y Gen. v. Platt*, 2 id. 150; *State ex rel. Pearman v. Liedtke*, 9 Neb. 490; *Dow v. Beidelman*, 49 Ark. 325; *Robertson v. People*, 20 Colo. 279; *Division of Howard Co.* 15 Kan. 194; *Smithee v. Campbell*, 41 Ark. 471; *Jones v. Hutchinson*, 43 Ala. 721; *Nelson v. Haywood Co.* 91 Tenn. 596; *State ex rel. Att'y Gen. v. Hagood*, 13 S. C. 46.

For the defendant there was a brief by *Hume, Oellerich & Jackson*, and oral argument by *John W. Hume*. They argued, among other things, that where the constitution expressly requires the proceedings of the legislature to be entered in the journals, such entries are a condition upon which the validity of an act will depend. In such a case the omis-

sion cannot be supplied by presumption, the constitutional requirement in such instance being mandatory and not directory. Suth. Stat. Const. § 48; Cooley, Const. Lim. (3d ed.), *135, *136, *140; Black, Const. Law, 284, 285; *Smithee v. Garth*, 33 Ark. 1; 4 Webster, Works, 295; 1 Story, Const. § 840; *Worthen v. Badgett*, 33 Ark. 513; *Supervisors of Ramsey Co. v. Heenan*, 2 Minn. 330; *Wise v. Bigger*, 79 Va. 269; *Fordyce v. Godman*, 20 Ohio St. 1; *Lincoln v. Haugan*, 45 Minn. 451; *Spangler v. Jacoby*, 14 Ill. 297; *People ex rel. Reitz v. De-Wolf*, 62 id. 253; *People ex rel. Badger v. Lœwenthal*, 93 id. 191, 206; *Norman v. Ky. Board of Managers*, 93 Ky. 537, 18 L. R. A. 556; *Whittaker v. Janesville*, 33 Wis. 76; *McDonald v. State*, 80 Wis. 407. There can be only one passage of a bill, and that must be after all amendments have been made thereto, and no further changes are to be made. A yea and nay vote in the senate on the bill as amended by the conference committee was essential. When it appears that the bill that passed one branch of the legislature was materially different in terms from the bill that passed the other branch, or where one branch wholly fails to pass it, or where the governor approves a bill materially different from the bill passed, it will be a nullity. Suth. Stat. Const. § 45; *Rode v. Phelps*, 80 Mich. 598; *State v. Wright*, 14 Oreg. 365; *Opinion of Justices*, 35 N. H. 579; *Opinion of Justices*, 52 id. 622; *Prescott v. Trustees of I. & M. Canal*, 19 Ill. 323; *Jones v. Hutchinson*, 43 Ala. 721; *State ex rel. Huff v. McLelland*, 18 Neb. 236; *Worthen v. Badgett*, 32 Ark. 511; *People ex rel. Yale v. Supervisors of Onondaga*, 16 Mich. 257; *State ex rel. Marlay v. Liedtke*, 9 Neb. 462; *Dow v. Beidelman*, 49 Ark. 325; *Burr v. Ross*, 19 id. 250; *Smithee v. Campbell*, 41 id. 471; *Moody v. State*, 17 Am. Rep. 28.

The following opinion was filed October 13, 1896:

WINSLOW, J. There are printed in the session laws of the state for the year 1895 two laws purporting to be chapter 221. The first of these apparent laws begins on page

367, and will be referred to in this opinion as "chapter 221 A," and the second immediately follows it, beginning on page 397, and will be referred to as "chapter 221 B." There are certain differences between the two, which it is unnecessary now to state. The constitutionality of certain provisions of this law or these laws was before the court in a former case. *Bittenhaus v. Johnston,* 92 Wis. 588. The provisions in question in that case were attacked as unconstitutional, because it was claimed that they were (a) *ex post facto;* (b) class legislation; and (c) that they deprived persons of property without due process of law. These objections were all overruled in that case. That decision, however, casts no light upon the present case. None of the questions now presented arose or was even remotely considered in that case. The question here is whether any such law as chapter 221 A or 221 B ever in fact passed the legislature, and was approved by the governor, so as to become a valid law. It appears to be a fact that two bills reached the governor's office, differing somewhat in some matters, both apparently passed by the legislature. It further appears that both of these bills were signed by the governor, and deposited in the office of the secretary of state. Here, apparently, the difficulty was first discovered. The duty of the secretary was, undoubtedly, to publish both apparent laws. He could not correct or revise them, save to correct manifest errors in spelling or grammar. R. S. sec. 343. It would be a fruitless task to inquire as to where the blunder occurred. It seems that, by some mistake, there must have been two bills sent from the senate to the governor for signature, and that, in the press of business, the fact that there were two bills was not discovered, and both were signed. However this may be, it is absolutely certain that there was in fact but one bill, No. 258 S, and that but one bill was voted on in the legislature.

It is claimed by counsel for the defendant, and admitted

by counsel for the state, that chapter 221 A is materially different from the engrossed bill of the senate, and hence that it is not the bill which passed either house, and, consequently, that it is not a law. This admission was certainly advisedly made. The conclusion is inevitable. Such being the fact, we have simply to consider whether the chapter which we have called "221 B" ever became a law. The objections made to the chapter are: First. That it never in fact passed the legislature, or, if it did pass, it did not pass by a yea and nay vote; and hence that it was not constitutionally passed, because it is a law making an appropriation of public money. Const. art. VIII, sec. 8. Second. That the governor never signed the bill as passed by the legislature, if any bill was in fact legally passed.

In considering these objections, a history of the progress of the bill through both houses, as disclosed by the journals of the houses, becomes necessary. On the 12th day of February, 1895, a bill No. 258 S was introduced in the senate, entitled "A bill to revise, amend and consolidate the laws of the state relating to game and its preservation, fish and the preservation and propagation thereof," and was referred to the committee on fish and game. On the 21st of March following, the committee reported the bill back with amendment by way of a substitute, and recommended its passage when so amended. On the 28th of March, an amendment was offered, and the bill, with the amendment, was re-referred to the committee on fish and game, who, on the 5th of April, reported it back with amendments, and recommended its passage as amended. It then went to the joint committee on claims, who on the same day reported it back, and recommended its passage. On the 9th of April two amendments were adopted to the bill, and it was ordered engrossed and read a third time. On the same day it was reported correctly engrossed, and the rules were suspended, and it was read a third time, and passed by a yea and nay

vote,— twenty-eight yeas and one nay. The bill then went to the assembly, where it was received April 10. It was made a special order for April 12 at 11 a. m., at which time several amendments were adopted, and the bill as amended was passed or concurred in by a yea and nay vote. None of the amendments adopted made any appropriation or affected any appropriation clause of the bill. On being returned to the senate, that body refused to concur in the assembly amendments, and a joint conference committee was appointed. The conference committee reported to the senate April 13, and recommended amendments as follows: "Amend by striking out the word 'tenth,' in line 4, section 14, and insert in lieu thereof the word 'first.' Amend the printed bill by striking out the words 'and of the Mississippi river' where they occur in the third line of section 11. Also amend section 16 of the printed bill by inserting the word 'and' after the words 'Sturgeon Bay' where they occur in the eighth line, and by striking out the words 'and of the Mississippi river' where they occur in the eighth and ninth lines of said section. Amend by striking out subdivision 4 of section 22 of the printed bill, and renumber subdivisions 4 to 9, inclusive. All other amendments and parts of amendments are recommended for indefinite postponement." The senate journal then says, "The report was agreed to." No yea and nay vote was taken,— at that time or afterwards.

The following entries appear in the assembly journal as of date April 13. It will be noticed that these entries refer to bill 258 A, and not 258 S; but it is claimed by the state that the error is merely clerical, and that it is absolutely certain that 258 S is the bill referred to. "The report of the conference committee on No. 258 A offered amendments as follows [here follow the amendments, set out in full in the report received by the senate above given], which were

adopted.   Mr. Buckstaff moved that the rules be suspended, and the vote reconsidered by which No. 258 *A* (a bill to amend sec. 255, R. S. 1878, as amended by ch. 257, Gen. Laws of 1882, and ch. 35, Gen. Laws of 1887, relating to change law in voting to change county seats) was passed, which motion was adopted.   The bill as amended by the conference committee was read a third time.   The ayes and noes being required, the bill passed: Ayes, sixty-two, noes, six; absent or not voting, thirty-two."   Then follows the vote in detail.   Unless the bill referred to in the foregoing extracts from the assembly journal can be held to be No. 258 S, then there is no record of any action by the assembly upon 258 S after the appointment of the committee on conference, and consequently nothing to show that it was ever passed by the assembly except when it was first passed, with the amendments embodied in it which the senate rejected.   By the senate journal it appears, further, that bill No. 258 S was reported as correctly enrolled on the 15th of April, and that a communication from the governor announcing his approval of the bill was received April 20. This closes the legislative history of the alleged law or laws.

An examination of the two supposed laws discloses further difficulties.   The amendments proposed by the conference committee were made in the law which we have called "chapter 221 A," but were never made in chapter 221 B. Now, as we have before said, chapter 221 A cannot be considered as any law at all, because it is materially different in certain respects which are unnecessary to be stated from the engrossed bill which in fact passed the senate.   Therefore the fact that the conference committee's amendments were incorporated by some person in it is of no moment. It was not, and is not, the bill that passed, if any passed. Chapter 221 B is in fact the engrossed bill *without* the amendments of the conference committee, and it was in this

condition when approved by the governor. Is it a valid law? We are compelled to say that it is not, for two reasons: First, because the record does not show that the legislature ever passed it; second, because the governor never approved the bill which the legislature attempted to pass.

1. The record does not show that the legislature legally passed any law. We shall not now consider the question which was raised and debated as to whether a yea and nay vote was essential upon the final passage of the bill, with the amendments of the conference committee. It is not necessary to decide that question in this case. It was ably contended that, because the amendments did not affect the appropriation clauses of the bill, it was unnecessary to take a yea and nay vote simply upon the adoption of the amendments; but that the constitutional provision (sec. 8, art. VIII, Const.) was satisfied by the yea and nay vote taken upon the original passage of the bill. The question is an interesting one, and authorities were cited bearing on either side of the question, which will be preserved in the report of the case. The difficulty in this case lies deeper, and consists in the fact that the assembly journal does not show that the assembly ever took any action on the bill after it passed it, with numerous amendments which the senate refused to concur in. We are vehemently urged to hold that the bill referred to as No. 258 A in the assembly journal was No. 258 S, and that the use of the wrong letter was simply a palpable clerical error which the court could overlook. It appeared that there was a bill introduced in the assembly, and known as 258 A. It was a bill amending the law relating to elections held to consider the change of county seats. This bill is pertinently and correctly described in the assembly journal. It is described by number, and its title is given at length. It is this bill which the assembly journal says in direct and unmistakable language was read a third time and passed. Can the court say, in face of this positive declaration, that

The State vs. Wendler.

it was another bill which passed? We think not. If it could, then there would be no reliance to be placed on the legislative record. The most that can be said is that it seems very probable that a mistake was made, and that 258 S was the bill which was acted on. But laws cannot rest on probabilities, even though they be extreme probabilities. If a court can say, "It is true the legislative record shows that one bill was passed, still it appears to the court that the record is mistaken, and that an entirely different bill was meant, and consequently it shall be enforced as a law," then there is an end of all certainty. The laws rest no more upon records, but upon the guess of a court made long afterwards. This cannot be endured. The official record must govern when its language is clear, and free from doubt or ambiguity; and that record shows that bill No. 258 S was never acted on in the assembly after it went to the conference committee.

2. The second ground upon which we feel compelled to hold the law invalid is fully as cogent and strong as the first. Conceding that bill No. 258 S passed both houses in legal form, with the amendments of the conference committee, still it was never approved by the governor as it was passed. The bill which the governor approved contained the clauses which the conference committee amendments struck out. One of these amendments was a very important one; namely, the amendment striking out the Mississippi river as one of the outlying waters of the state, and making it one of the inland waters. This affected many parts of the bill, and cannot be regarded for a moment as immaterial or trivial. Granting that any bill at all passed the legislature, it is absolutely certain that it was an entirely different bill from that which the governor signed. Nor can it be said that because the governor signed 221 A, which contained the conference committee's amendments, therefore he must be considered as having approved the amendments.

We cannot uphold laws upon mere speculation as to what the executive might or might not have done. No. 221 A never passed the legislature, and its approval by the executive can cut no figure in determining the effect of his approval of 221 B. The requirement which is absolutely essential is that the governor shall approve *the same law which the legislature has passed*. This is the fact *which makes a law*, and want of it makes mere waste paper. A case singularly like the present in its facts and conclusions reached by the court is that of *Rode v. Phelps*, 80 Mich. 598. We cannot forbear quoting from the opinion one sentence which seems to exactly fit the present case. It is as follows: "It is to be deeply regretted that as important a law as this, covering a subject of great public interest, should, because of the gross carelessness, or worse, of some one, be wiped bodily from the statute book. But the courts are not responsible for this; nor can they usurp the functions of legislation, and, by shutting their eyes to the records of legislative doings, declare a law valid that never passed the legislature, however well authenticated it may be by the certificates of officials."

We have been desirous of upholding this law if it could be done. We are well aware that it has been enforced for more than a year, and that very probably serious liabilities have been incurred by such enforcement. For these reasons, if for no other, we have given the case the most careful and diligent consideration in our power, but we have been unable to reach any other conclusion from that which we have expressed. The first four questions must be answered in the negative, and the fifth question in the affirmative. These answers make it unnecessary to answer the sixth question.

*By the Court.*— The questions are so answered.

A motion for a rehearing was denied November 24, 1896.