421 A.2d 791

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael Xavier PFENDER.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Aug. 22, 1980.

Petition for Allowance of Appeal Denied Feb. 27, 1981.

Ronald L. Buckwalter, District Attorney, Lancaster, for Commonwealth, appellant.

David F. Wedge, Lancaster, for appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

Appellee, Michael Xavier Pfender, is charged with arson and related offenses [1] in Lancaster County. Pfender's former attorney met with the District Attorney to discuss the charges and thereafter an agreement was reached whereby Pfender would voluntarily undergo a polygraph (lie detector) test. The proposed use of the polygraph test results was set forth in a stipulation signed by Ronald L. Buckwalter, District Attorney of Lancaster County, Samuel M. Mecum, Pfender's attorney and appellee. The stipulation provides:

AND NOW, this 30 day of October, 1978, Michael Xavier Pfender, Defendant in the above–captioned matter, and Ronald L. Buckwalter, Esquire, District Attorney of Lancaster County, hereby stipulate and agree as follows:

1. Defendant Michael Xavier Pfender agrees to submit himself to a Polygraph (lie detector) test, which test will be designed to determine whether or not Defendant Pfender is telling the truth, in connection with his recollection of events transpiring at the Willow Street Mobile Home Park, 1014 Willow Street Pike, Lancaster, Pennsylvania, on or about the date of April 16, 1978.

2. The Polygraph, or lie detector test is to be administered by any qualified member of the Lancaster City Police Department.

---

1. 18 Pa.C.S.A. § 3301(a).

3. It is agreed on part of Defendant Pfender that, should the results of the Polygraph indicate deception, these results may be used against him in connection with information No. 1376 of 1978.

4. On part of Ronald L. Buckwalter, Esquire, District Attorney of Lancaster County, it is agreed that, should the results of the Polygraph test indicate no deception on the part of Defendant Pfender, information No. 1376 of 1978 shall be nol prossed (dismissed).

5. Defendant Michael Xavier Pfender expressly certifies that this Stipulation is entered voluntarily on his part, after having had his legal rights explained to him by his attorney, Samuel M. Mecum, Esquire, of 121 East King Street, Lancaster, Pennsylvania, and further certifies that he has been made aware of the fact that he is not required to enter into the above Stipulation, and does so, * * * any rule of law or of court to the contrary notwithstanding.

STIPULATED AND AGREED the day and year first above written.

By: /s/ Michael Xavier Pfender

Defendant Michael Xavier Pfender

GLAZIER, MINNEY, MECUM & KOHR

By: /s/ Samuel M. Mecum

Samuel M. Mecum, Esquire
Attorney for Defendant
Michael Xavier Pfender

By: /s/ Ronald L. Buckwalter, Esquire

Ronald L. Buckwalter, Esquire,
District Attorney of
Lancaster County

Pursuant thereto, a polygraph test was administered to appellee by an experienced polygraphist from the Lancaster Bureau of Police, Jan G. Walters. The result in the opinion of Mr. Walters, was that Pfender was "not being entirely truthful" in that the examiner found deception indicated in three of the four pertinent questions asked during the test.

█ Thereafter, Pfender obtained new counsel who filed an application to suppress any evidence of the results of the polygraph examination. After a hearing the Court suppressed the results of the polygraph examination, reasoning that since the appellate courts in Pennsylvania have determined that the results of polygraph tests are inadmissible in evidence, that a stipulation could not cure the inadmissibility. The court found, however, that the stipulation was entered into by Pfender "knowingly, voluntarily and intelligently, without coercion having been exerted against him." The court also entered a certification under the Act of July 9, 1976, P.L. 586, No. 142 § 2 (42 Pa.C.S. § 702(b)) that an immediate appeal may materially advance the ultimate termination of the case. However, since the Commonwealth did not file a petition for permission to appeal as required by Pa.R.A.P. 1311, the certification under § 702(b) does not provide us with jurisdiction over this case.

█ Nevertheless it is settled that the Commonwealth may appeal from a pretrial suppression order if the question raised is a pure question of law and if the order effectively terminates or substantially handicaps the prosecution. *E.g., Commonwealth v. Saunders*, 483 Pa. 29, 394 A.2d 522 (1978); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). However, our Court is divided over how the Commonwealth establishes its right to appeal. *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978), presents three different views. One view is that the Commonwealth need only certify in its brief that the suppression order will effectively terminate or substantially handicap the prosecution. *Id.*, 254 Pa.Super. at 12–13, 385 A.2d at 500 (Price, J. dissenting). A second view is that the record must indicate that the suppression order will in fact effectively terminate or substantially handicap the prosecution. *Id.*, 254 Pa.Super. at 12, 385 A.2d at 499 (Hoffman, J. dissenting). The third view is that the Commonwealth in its brief must state that the suppression order will effectively terminate or substantially handicap the prosecution and must also provide an explana-

tion, not inconsistent with the record, why this is so. *Id.,* 254 Pa.Super. at 10, 385 A.2d at 499 (plurality opinion of Spaeth, J.). However, we need not decide which view should prevail since the instant case is properly before us under any of the three views.

## I

We are thus asked to determine the admissibility of polygraphic evidence by stipulation of the parties. Before attempting to decide this issue, we first consider the status of Pennsylvania law on the subject of polygraph evidence in general. Pennsylvania cases still adhere to the principle set forth in *Commonwealth ex rel. Riccio v. Dilworth,* 179 Pa.Super. 64, 115 A.2d 865 (1955) that: [2]

> The reliability and scientific infallibility of polygraph, lie detector, or other psychological deception test must be more definitely established before our courts will accept their results as credible." 179 Pa.Super. at 68, 115 A.2d at 867.

In 1976 the Supreme Court of our State reiterated the exclusionary rule of *Riccio* noting that it has been repeatedly and consistently held in Pennsylvania that the results of a polygraph examination are inadmissible for "any purpose" because the reliability of such tests has not been established. *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976). However, the Court further stated:

> Certainly it is incumbent upon us to be alert to developments in this field so that, if indeed lie detectors have passed beyond the experimental stage to a trustworthiness comparable to that of other scientific tests whose results have immeasurably aided our courts in their search for truth, we do not deny ourselves the enlightenment they might provide. (467 Pa. at 142, 354 A.2d 875.)

**2.** *See also: Commonwealth v. Saunders,* 386 Pa. 149, 125 A.2d 442 (1956); *Commonwealth v. Johnson,* 441 Pa. 237, 272 A.2d 467 (1971); *Commonwealth v. Brooks,* 454 Pa. 75, 309 A.2d 732 (1973); *Commonwealth v. Cunningham,* 471 Pa. 577, 370 A.2d 1172 (1977).

The court in *Gee* nevertheless declined to reconsider the established view of inadmissibility since in that case the polygraph test results were inconclusive. Since the time of *Gee*, our appellate courts have not reexamined the rule of inadmissibility and still follow the principle that polygraphic examinations have not obtained acceptance as a reliable means of ascertaining truth or deception. *See Commonwealth v. Kemp*, 270 Pa.Super. 7, 410 A.2d 870 (Special transfer case) (1979).

Thus, it is the present view in Pennsylvania that such test results are not reliable even though the courts have evinced a desire to keep an open mind on the subject.

On the precise issue of admissibility of polygraphic evidence pursuant to stipulation we find that the Pennsylvania cases have only incidentally touched upon the subject. In *Commonwealth v. McKinley*, 181 Pa.Super. 610, 123 A.2d 735 (1956), the court held that the trial judge properly instructed the jury to ignore any evidence of the defendant's offer to take a lie detector test. In so holding, the court stated:

> In the absence of a stipulation of the parties to the contrary, the results of lie detector tests are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction. (181 Pa.Super. at 619, 123 A.2d 735.)

We do not deem this statement as being any authority for the admission of polygraphic evidence by stipulation. The court was simply supporting its conclusion that the results of such tests are inadmissible and that therefore any evidence of an offer to undergo the test would likewise be inadmissible.

In *Commonwealth v. Chapman*, 255 Pa.Super. 265, 386 A.2d 994 (1978) our court had before it the issue of the refusal to permit a polygraph examination of a defendant under stipulation that the results would come into evidence. The court in a brief footnote (255 Pa.Super. 288 n. 15, 386 A.2d 994) dismissing "other points" rejected the

argument citing *Commonwealth v. Gee, supra,* and *Commonwealth v. Brooks,* 454 Pa. 75, 309 A.2d 732 (1973).

It appears then, that the question of admissibility of polygraphic evidence by stipulation has yet to be squarely met in Pennsylvania.

## II

The leading case dealing with the admissibility of polygraphic evidence by stipulation is *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962). In that case polygraphic evidence was used at trial pursuant to a stipulation and the Supreme Court of Arizona considered the propriety of the evidence in a presentence certified appeal. After a thorough review of the nature and scientific reliability of polygraphic examinations the court concluded:

> Although much remains to be done to perfect the lie detector as a means of determining credibility we think it has been developed to a state in which its results are probative enough to warrant admissibility on stipulation. (91 Ariz. at 283, 371 A.2d 894.)

The court held that polygraph evidence is admissible after stipulation to corroborate other evidence of a defendant's participation in the crime charged and to corroborate or impeach his own testimony if the defendant takes the stand. The court also laid down qualifications which must be met in order to permit the use of the evidence.[3]

3. *State v. Valdez, supra,* 91 Ariz. at 283, 371 P.2d at 900–01 provides:
    (1) That the county attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
    (2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i.e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
    (3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross–examine the examiner respecting:
    a. the examiner's qualifications and training:

Ten years later the Supreme Court of New Jersey in *State v. McDavitt*, 62 N.J. 36, 297 A.2d 849 (1972) reached the same conclusion as the Arizona Court and held that polygraphic testing has developed to such a point of reliability that when the state stipulates to have the defendant submit to a polygraph test and have the results introduced into evidence, such evidence should be received. The court also concluded that the evidence is not admissible as direct proof of a defendant's guilt or innocence of the crime charged but that it is simply opinion evidence by an expert and tends only to indicate whether or not the subject was telling the truth when tested.[4]

More recently the question of admissibility of polygraphic evidence by stipulation limited to the issue of the defendant's credibility was faced by the highest court in West Virginia in *State v. Frazier*, W.Va., 252 S.E.2d 39 (1979). In that case the court ruled the evidence inadmissible, holding that evidence which the courts do not deem worthy of admission cannot be made so by stipulation. The court observed that in those cases which admit the evidence by stipulation there is the silent premise that the courts do not really believe the polygraph to be scientifically accurate and they therefore restrict the admissibility on artificial grounds. The court was persuaded that polygraph tests have an element of uncertainty because the results are dependent on the subjective analysis of the operator.

> b. the conditions under which the test was administered;
> c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and
> d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
> (4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

4. *See also: State v. Christopher*, 134 N.J.Super. 263, 339 A.2d 239 (1975); *State v. South*, 136 N.J.Super. 402, 346 A.2d 437 (1975).

Similarly, the Supreme Court of Alaska in *Pulakis v. State*, 476 P.2d 474 (1970) held that stipulated polygraphic evidence may not be received in evidence over objection since:

> A stipulation for admission does not increase the reliability of polygraph results and therefore should not lead to any deviation from the exclusionary policy. (476 P.2d at 479.)

In Oklahoma the Court of Criminal Appeals in 1975 reversed a line of cases admitting polygraph evidence upon stipulation and found that the potential unreliability of polygraphy dictated its total exclusion.

> In the situation where all parties in the case stipulate to the admission of results of a polygraph examination, this Court has held that it is within the discretion of the trial court to admit such evidence. *See, Castleberry v. State*, Okl.Cr., 522 P.2d 257 (1974) and *Jones v. State*, Okl.Cr., 527 P.2d 169 (1974). However, in light of the potential unreliability of polygraph examinations at this time, we feel that in all future cases the introduction into evidence of polygraph examination results for any purpose, even if admitted upon stipulation of all parties, will be error.

*Fulton v. Oklahoma*, Okl.Cr., 541 P.2d 871 (1975).

We think these last cases illustrate the proper view for Pennsylvania Courts on this issue.[5] As previously noted, our cases have held that the reliability of polygraphic test results have not as yet been sufficiently demonstrated. No Pennsylvania case has undertaken a review of the science of polygraphy in order to evaluate its present reliability. Our research discloses that there is no jurisdiction where the test is held to be generally admissible at trial. This has been the result even after an exhaustive analysis of the legal and scientific value of polygraphic evidence. *See State v. Catanese*, 368 So.2d 975 (La.1979).[6] We believe that the recep-

5. For a collection of cases on admissibility by stipulation see 53 A.L.R.3d 1005 (1973).

6. *Catanese* points out that caution is dictated in the area of admission of polygraph results in that the questions which deal with the

tion of such evidence even by stipulation before our courts undertake to evaluate and accept polygraphy generally is fraught with danger.

Since the general admissibility of polygraphic test evidence has not been argued here and the record is devoid of any evidence as to the reliability of polygraph test results, we do not deem it appropriate for us to consider the broad issue in this case.

■ We conclude that evidence of results of the polygraphic tests is not admissible in evidence even in the face of a knowing, voluntary and intelligent stipulation that they may be submitted in evidence.

Order affirmed.

PRICE, J., concurs in the result.

very basic issues in a case are likely to be given great weight by the fact finder. The court felt that before consideration could be given to admitting polygraphic evidence there should be state regulation and licensing of polygraphers (Pennsylvania has none) and that procedural safeguards should be established by court rule or legislation.