20 A.3d 1178

**Charles POULSON, Appellant**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Appellee.**

Supreme Court of Pennsylvania.

April 28, 2011.

Charles Poulson, pro se.

Chad L. Allensworth, Harrisburg, Linda J. Laub, Victoria Sellitto Madden, PA Board of Probation & Parole, for Pennsylvania Board of Probation and Parole.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

PER CURIAM.

In this prisoner appeal involving the denial of parole consideration for a life-sentenced murderer, and a subsequent request for mandamus relief to order the Board of Probation and Parole ("Board") to parole him, the primary issue raised by appellant before our Court is whether a 1965 proposed Senate Bill that was not approved by the General Assembly, not signed by the Governor, and not enrolled by the Secretary of State is nonetheless good law. The prisoner also claims that Act of August 11, 2009, P.L. 147, No. 33 ("Act 2009–33") repealed the prohibition against paroling inmates sentenced to life imprisonment. Both arguments are frivolous; accordingly, we affirm the order of the Commonwealth Court denying mandamus relief.

Charles Poulson ("appellant") was found guilty of first-degree murder and related crimes in the Court of Common Pleas of Bucks County. On February 26, 1993, he was sentenced to an aggregate term of life imprisonment.

In August of 2010, appellant filed a parole application with the Board. In his application, appellant stated that Senate Bill No. 313 of 1965 ("SB 313") dictates that any prisoner sentenced to life imprisonment is eligible for parole after he has served 15 years of imprisonment. SB 313 proposed to amend the act governing parole at that time. *See* Act of August 6, 1941, P.L. 861, *formerly* 61 P.S. §§ 331.1–331.34a (repealed). One of SB 313's proposed amendments would have permitted a prisoner sentenced to life imprisonment to be considered for parole after serving a minimum of fifteen years. However SB 313 did not carry the day. Instead, another proposal to amend the parole laws won the support of the General Assembly and was signed into law by the Governor. *See* Act of Dec. 27, 1965, P.L. 1230 ("Act 1965–1230"). Act 1965–1230 left the prohibition against paroling inmates

sentenced to life imprisonment intact. In 2009, the former laws regarding parole were repealed and were largely reenacted. *See* Act 2009–33. Act 2009–33 continued, with only minor stylistic adjustments to language, the prohibition against parole for inmates sentenced to life imprisonment. *See* 61 Pa.C.S. § 6137.

The Board denied appellant's application for parole. Rather than appeal the denial of parole, appellant filed an original jurisdiction action in the Commonwealth Court, requesting mandamus relief. The Board filed preliminary objections in the nature of a demurrer.

The Commonwealth Court sustained the Board's preliminary objections. The Commonwealth Court noted that 61 Pa.C.S. § 6137, and that section's predecessor, 61 P.S. § 331.21 (repealed), prohibited the parole of any prisoner sentenced to a term of life imprisonment. The Commonwealth Court further noted that appellant failed to establish that SB 313 was ever signed into law. Thus, the court found that appellant was not entitled to mandamus relief. Appellant filed a notice of appeal with this Court.

 "[T]he question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible. In reviewing a lower court's decision to grant a demurrer, our Court's standard of review is *de novo*." *Stilp v. Com., General Assembly*, 601 Pa. 429, 974 A.2d 491, 494 (2009) (citations omitted). Mandamus is an extraordinary writ that will issue to compel performance of a ministerial act or mandatory duty where there exists (1) a clear legal right in the petitioner, (2) a corresponding duty in the respondent, and (3) absence of any other appropriate or adequate remedy. *Relosky v. Sacco*, 514 Pa. 339, 523 A.2d 1112 (1987).

 In his first argument, appellant states that per the Enrolled Bill Doctrine, we should declare that SB 313 is a validly enacted law. He argues that this doctrine "permits Bills to become law which have not been actually passed by the legislature, *Rode v. Phelps*, 80 Mich. 598 [45 N.W. 493 (Mich.1890) ]." He argues that regardless of how informal the

process is, legislation that is passed must be seen as a binding act. Appellant's Brief at 7 (citing *Kilgore v. Magee*, 85 Pa. 401 (1877)). He asserts that "[t]hose, (Legislatures) [sic] who had the power to object to, claim prejudice or to block the passage of SB 313, chose not to, and their acquiescence is conclusive evidence that no infringement of the Constitution occurred." He also claims that *Commonwealth v. Pfender*, 280 Pa.Super. 417, 421 A.2d 791 (1980) shows that "the judiciary sees parole eligibility for those sentenced to life terms at 15 years, as within the police powers of the state, valid and in compliance with the requisites [sic] formalities of the Enrolled Bill Doctrine." Appellant's Brief at 8. This claim is frivolous.

▆▆▆ Appellant is wrong in believing that SB 313 has the force of law—under any conceivable theory. "An enrolled bill is one which has been certified by the Speaker of the House and the presiding officer of the Senate as having passed the General Assembly, and has been signed by the Governor and lodged with the Secretary of the Commonwealth." *City of Philadelphia v. Com.*, 575 Pa. 542, 838 A.2d 566, 580 (2003) (citations omitted). In order to preserve the separation of powers, the judiciary exercises restraint in invalidating enacted legislation. "One aspect of such restraint has been the principle, embodied in the enrolled bill doctrine, that, once a statute is attested by the presiding officers of the Legislature, approved by the Governor, and officially lodged, it is presumed to have been enacted in the manner required by law." *Id.* The doctrine provides that "the subjective, individualized motivations or impressions of specific legislators would not be an appropriate basis upon which to rest a determination as to its validity." *Id.* Yet, the doctrine does not prevent the judiciary from exercising its function as the arbiter of whether a law passes constitutional muster.

SB 313 was never attested to by the presiding officers of the General Assembly, was not signed into law by the Governor, and was not officially lodged. Rather, it was a proposal for legislation—one of many every legislative session—that never became law. The fact that it was never enacted does not, as Appellant would have it, mean the opposite: that the Legisla-

ture "acquiesced" in its passage. Bills do not become laws when they fail to garner the support of the Legislature and the Executive; they die.

Not surprisingly, the cases cited by Appellant do not support his position. *Rode*, as a 120 year old decision from a foreign jurisdiction, could provide only marginal guidance, at best. More importantly, it is inapposite. In *Rode*, the Michigan Supreme Court found that the bill attested to by the officers of the Legislature, and which the Governor signed, was not the version that was actually passed; rather, a scrivener had presented a copy of an earlier version of the bill. That is not the situation with SB 313, which was never attested to by officers of the Legislature, not signed into law by the Governor, and not officially lodged.

*Kilgore* is also of no assistance to appellant. *Kilgore* stated that "when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage." Again, SB 313 was not passed, approved, or certified. Additionally, *Kilgore* has limited precedential value. In modern times, our Court has distanced itself from *Kilgore's* view of the Enrolled Bill Doctrine. The *City of Philadelphia* Court stated that while *Kilgore* espoused a "strict doctrine" that forbade the judiciary from looking at the form in which a bill was passed, that rule had been "modified" in recent years to make clear that, to the contrary, the courts must examine the method by which a bill was enacted when constitutional questions as to its passage are raised. *City of Philadelphia*, 838 A.2d at 580.

Finally, *Pfender* is inapposite. In fact, inapposite is too light a term; appellant's citation to *Pfender* is a legal reasoning *non sequitur*. *Pfender* involved a pre-trial appeal of a trial court's ruling regarding the admissibility of the results of a polygraph test in an arson trial. That decision has no significant point in common with the issue in front of us. The defendant in *Pfender* was on trial for a crime that did not carry the possibility of a life sentence; he was not yet convicted of any crime; there was no mention of parole; SB

313 was not at issue; and finally, the Enrolled Bill Doctrine was not mentioned.

Under no construction of the law can appellant's argument prevail; he was not entitled to mandamus relief upon this frivolous claim.

 Appellant's second claim is that "it was known" that Act 2009–33 repealed the prohibition against parole for those who had been sentenced to life imprisonment. *See* Appellant's Brief at 7. Thus, he reasons, commencing October 13, 2009, the effective date of Act 2009–33, the prohibition against paroling inmates sentenced to life imprisonment was eliminated. Notably, with this argument, appellant contradicts his primary argument, as this theory accepts as a predicate that presently governing legislation does prohibit parole for a prisoner sentenced to life imprisonment. Appellant claims that the present prohibitory language did not become effective until October 27, 2010, which was nearly one year after Act 2009–33 repealed the former prohibition against parole. Although he does not state this clearly, appellant apparently believes that since he applied for parole during this alleged one year window when prisoners who were serving life sentences were eligible for parole, his parole application should have been considered and granted.

Act 2009–33 enacted 61 Pa.C.S. § 6137. That provision states, in pertinent part, that the Board "may release on parole any inmate to whom the power to parole is granted to the board by this chapter, except an inmate condemned to death or serving life imprisonment[.]" Act 2009–33 was signed into law on August 11, 2009, and became effective on October 13, 2009. Section 6137 was amended on October 27, 2010, effective immediately. That amendment, however, made no changes to the language regarding eligibility for parole of those serving a life sentence.

Section 6137's prohibition on paroling prisoners serving life imprisonment terms was a substantial reenactment of the former provision. *See* 61 P.S. § 331.21 (repealed) (Board may "release on parole any convict confined in any penal institution

of this Commonwealth as to whom power to parole is herein granted to the board, except convicts condemned to death or serving life imprisonment[.]"). Thus, for the entirety of appellant's sentence—without interruption—it has been the law of this Commonwealth that inmates serving a life sentence are not eligible for parole. There was no period when an inmate serving a life sentence would have been eligible for parole. The argument to the contrary has no basis in law and cannot be the basis for mandamus relief.

For the foregoing reasons, the order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the per curiam opinion.