Bruce K. WORTHINGTON, Petitioner,

v.

Pennsylvania BOARD OF PROBATION AND PAROLE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 25, 2001.

Decided Oct. 2, 2001.

Kevin M. Leckerman, Doylestown, for petitioner.

Susan M. Zeamer, Harrisburg, for respondent.

Before SMITH, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Bruce K. Worthington (Worthington) petitions for review of the December 20, 2000 order of the Pennsylvania Board of Probation and Parole (Board), which denied his request for administrative relief in connection with the Board's decision to recommit Worthington to serve eighteen months as a technical parole violator (TPV). We vacate and remand.

Worthington was serving a sentence of four to eight years for burglary, criminal conspiracy and criminal trespass. (R.R. at 1.) On December 16, 1998, he was released on parole to a community corrections center (CCC) for a minimum period of six months and until his home, employment and drug/alcohol treatment stabilized. (R.R. at 9.)

Condition No. 1 of Worthington's parole stated that he was not to leave the Philadelphia district without prior written permission of the parole supervision staff. (R.R. at 10.) Condition No. 7 set forth as a special condition of parole that Worthington's removal or termination from the CCC[1] for any reason other than successful completion of the program would be a violation of his parole. (R.R. at 10–11.)

On December 22, 1998, Worthington signed out of the CCC but failed to return that day or anytime thereafter. (R.R. at 16.) Because of this, the CCC terminated Worthington's involvement in the program.

---

1. The CCC in this case was Volunteers of America. (R.R. at 12.)

(R.R. at 27.) On May 30, 2000, Bristol Township police arrested Worthington for simple assault, harassment and public drunkenness. (R.R. 18–19.) That same day, the Board issued an order to detain Worthington for forty-eight hours. (R.R. at 14.) The next day, May 31, 2000, the Board issued a warrant to commit and detain Worthington. (R.R. at 15.)

The Board scheduled a violation hearing for June 29, 2000, but this hearing was continued so that Worthington could secure counsel. (R.R. at 26.) The Board rescheduled the hearing for August 3, 2000, sending a copy of the hearing notice to the public defender of Bucks County. (R.R. at 27.) However, the public defender did not appear at the August 3, 2000 hearing because of a scheduling conflict. (R.R. at 28.) The Board then assigned the case to a private attorney and continued the hearing until August 24, 2000. On the continuance request form, signed by Worthington, the hearing examiner wrote "Last continuance." (R.R. at 29.)

At the August 24, 2000 hearing, Worthington's new attorney did not appear. Worthington signed a "Waiver of Representation by Counsel" and, when asked on the record, stated that he did so of his own free will. (R.R. at 36, 46.) The hearing examiner then asked Worthington if he was going to make any motions or admissions, and Worthington replied, "No." (R.R. at 37.) When the hearing examiner asked again if there would be any admissions, Worthington replied, "I have no idea. I don't even know. I never did this without a lawyer. ...." (R.R. at 37.) The hearing examiner then asked Worthington if he admitted to the charges, and Worthington replied, "Yes, I left the halfway house [the CCC] and went back to Berks County, yes." (R.R. at 38.) Wor-

thington explained that he left the halfway house because he had a bad liver and needed to get his medical records. (R.R. at 39.) Worthington also testified that he lived with his girlfriend, worked the entire time he was gone and did not use drugs. (R.R. at 39–41.)

Based on Worthington's admissions, the hearing examiner determined that Worthington violated Condition Nos. 1 and 7. (R.R. at 32.) As a mitigating circumstance, the hearing examiner noted that Worthington left the CCC because the CCC was not providing him with treatment for his medical problem, hepatitis C. In addition, the hearing officer noted that Worthington lived with his girlfriend, went to work and did not use drugs. (R.R. at 31.) The hearing examiner decided that Worthington should be recommitted to serve eighteen months as a TPV. (R.R. at 32.) The Board issued an order on October 9, 2000 based on the hearing examiner's decision. (R.R. at 50.)

█ Worthington, through the Office of Public Defender of Bucks County, filed a petition for administrative review with the Board. Worthington argued that: (1) it was improper for the Board to rely solely on his admissions; (2) the Board failed to consider the mitigating circumstances in recommitting him for eighteen months; and (3) the Board deprived him of his right to counsel. (R.R. at 53–54.) The Board held that it properly relied on Worthington's admissions pursuant to *Pitch v. Pennsylvania Board of Probation and Parole*, 100 Pa.Cmwlth. 114, 514 A.2d 638 (1986), that it properly considered mitigating factors in recommitting him for eighteen months and that Worthington waived his right to counsel. (R.R. at 57.) Worthington now petitions this court for review.[2]

2. Our scope of review is limited to determin-    ing whether constitutional rights were violat-

We shall first address whether the Board deprived Worthington of his right to counsel.[3] The regulation at 37 Pa.Code § 71.2(11)(v) and (vi) states that, before a violation hearing, the parolee shall be notified of the following:

(v) The right to representation by counsel at the hearing, the right to free counsel, if the parolee is unable to afford to retain counsel, and the name and address of the public defender.

(vi) That there is no penalty for requesting counsel.

It appears from the record that Worthington received this notice and that Worthington requested representation by counsel. (*See* R.R. at 26, 28, 29.) The regulation at 37 Pa.Code § 71.2(12) states that, if the parolee is unable to afford counsel, the Board will notify the appropriate public defender by sending him or her a copy of the written notice. Here, the Board sent a copy of the notice of charges and hearing to the public defender. (*See* R.R. at 27.)

However, the public defender failed to appear at the August 3, 2000 hearing due to a scheduling conflict, and Worthington requested a continuance. The hearing examiner granted the continuance and assigned another attorney to handle the case, but, on August 24, 2000, the new attorney also failed to appear.[4] (R.R. at 29.) Worthington then signed a waiver of counsel form.

Here, the record shows that Worthington originally intended to be represented by counsel at the August 24, 2000 hearing. Moreover, Worthington was not at fault for the failure of counsel to appear on August 3, 2000 or August 24, 2000; even so, the hearing examiner did not advise Worthington that he still could request an additional continuance to secure counsel, nor did the hearing examiner offer Worthington another continuance to secure counsel.[5] Thus, it is not clear that Worthington knowingly signed the waiver of counsel form.

---

ed, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**3.** We note that the right to counsel at a violation hearing is not based on either the Pennsylvania or the U.S. Constitutions but, rather, on statutory law, case law and regulatory law. *Coades v. Pennsylvania Board of Probation and Parole,* 84 Pa.Cmwlth. 484, 480 A.2d 1298 (1984).

**4.** Where a parolee appears at a Board hearing without counsel and desires counsel, the Board is "required to grant the parolee reasonable continuances to secure counsel." *Hill v. Pennsylvania Board of Probation and Parole,* 89 Pa.Cmwlth. 140, 492 A.2d 80, 83 (1985), *appeal denied,* 514 Pa. 650, 524 A.2d 496 (1987).

> While the matter of granting continuances is normally a discretionary act of the adjudicatory body which will not be disturbed in the absence of an abuse of that discre-

tion, we believe that the matter of representation by counsel at a parole hearing is of such critical importance that the Board proceeds at its peril when it conducts a hearing where the person entitled to counsel requests counsel but is not represented at the hearing.

*Brown v. Pennsylvania Board of Probation and Parole,* 70 Pa.Cmwlth. 597, 453 A.2d 1068, 1070 (1982). A parolee is not entitled to a never-ending or unlimited series of continuances to obtain counsel; however, where counsel is unable to attend a hearing, the Board "should give the parolee the benefit of the doubt and grant additional time to procure the services or presence of counsel." *O'Hara v. Pennsylvania Board of Probation and Parole,* 87 Pa.Cmwlth. 356, 487 A.2d 90, 96–97 (1985).

**5.** Cf. *Roblyer v. Pennsylvania Board of Probation and Parole,* 148 Pa.Cmwlth. 107, 609 A.2d 884 (1992) (stating that the hearing examiner advised the parolee that he could request a continuance to secure counsel); *Hill* (stating that the hearing examiner offered the parolee a continuance to secure counsel).

Under 37 Pa.Code § 71.2(14), "If a parolee appears without counsel at the violation hearing, the panel or examiner shall determine whether the parolee understands the right to free counsel if unable to afford counsel, and that there is no penalty for requesting counsel." This court explained this regulation in *Oliver v. Pennsylvania Board of Probation and Parole*, 89 Pa.Cmwlth. 635, 494 A.2d 10, 12 (1985) (footnote omitted) (emphasis added), stating:

> [T]he Board or hearing examiner has an obligation to determine if a parolee, appearing without counsel, understands his right to counsel, his right to free counsel if unable to afford private counsel and that he shall not be penalized in any way for requesting counsel. Only upon the satisfaction of the Board or hearing examiner that a parolee's refusal of counsel is *knowing, intelligent and freely made* and after the execution of a written waiver to that effect, can the hearing proceed in the absence of counsel for the parolee.

■ Here, when Worthington appeared without counsel at the August 24, 2000 hearing, the hearing examiner had a legal obligation to determine whether Worthington's waiver of counsel was knowing, intelligent and freely made. The hearing examiner asked Worthington whether his waiver of counsel was freely made, but the hearing examiner never inquired about the basis for Worthington's sudden abandonment of his right to be represented by counsel.[6] *Cf. Roblyer v. Pennsylvania Board of Probation and Parole*, 148 Pa. Cmwlth. 107, 609 A.2d 884 (1992) (holding that the hearing examiner should have conducted a more searching inquiry to ascertain whether the parolee's medication affected his waiver of counsel).

■ Because the hearing examiner did not conduct a more searching inquiry to ascertain the basis for Worthington's sudden waiver of counsel, we vacate the Board's December 20, 2000 order and remand this case to the Board so that a hearing examiner can make a specific inquiry on the record as to the reasons Worthington signed the waiver of counsel.[7]

### ORDER

AND NOW, this 2nd day of October, 2001, the order of the Pennsylvania Board of Probation and Parole (Board), dated December 20, 2000, is vacated, and this case is remanded to the Board so that a hearing examiner can make a specific inquiry on the record as to the reasons Bruce K. Worthington signed the waiver of counsel.

Jurisdiction relinquished.

6. As indicated above, in granting a continuance on August 3, 2000, the hearing examiner wrote "Last continuance" on the continuance form. Where Worthington had received his "Last continuance," the hearing examiner should have at least inquired as to whether Worthington signed the waiver of counsel only because he believed he was not entitled to another continuance.

7. Because of our disposition of this issue, we decline to address the other issues raised by Worthington. Nevertheless, on remand, should the Board find that Worthington's waiver was *not* knowing, intelligent and freely made and decide that it is necessary to conduct a proper hearing, with Worthington represented by counsel, we note that the Board has imposed separate penalties for Worthington's violations of Condition Nos. 1 and 7. However, where the Board has imposed a special condition that is duplicative of a general condition, the Board may not impose a penalty for each violation without some justification. *Gartner v. Pennsylvania Board of Probation and Parole*, 79 Pa.Cmwlth. 141, 469 A.2d 697 (1983).