20 A.3d 1193

**Charles FROSS, M. Doe, D. Doe, Shawn Czerwien, Charles Meter, and Christopher Haigh, Appellees**

**v.**

**COUNTY OF ALLEGHENY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2010.

Decided May 25, 2011.

George M. Janocsko, Michael Henry Wojcik, Craig Eliot Maravich, Allegheny County Law Department, Caroline P. Liebenguth, Pittsburgh, for County of Allegheny.

Andrew A. Chris, Matthew A. Fry, Haines & Associates, for Amicus Curiae, the Treatment of Sexual Abusers.

Edwin J. Strassburger, Strassburger, McKenna, Gutnick & Gefsky, Donald F. Driscoll, Community Justice Project, Pittsburgh, Witold J. Walczak, for Charles Fross, et al.

Marcia Mary Waldron, U.S. Court of Appeals, 3rd Circuit, for Participant, United States Court of Appeals for the Third Circuit.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.

Upon certification by the U.S. Court of Appeals for the Third Circuit, we accepted for review the issue of whether Allegheny County Ordinance No. 39–07–OR (the "Ordinance"), which imposes residency restrictions on certain offenders, is preempted by the Pennsylvania Prisons and Parole Code, 61 Pa.C.S. § 101 *et seq.*, ("Parole Code") and/or by the Pennsylvania Sentencing Code, 42 Pa.C.S. § 9701 *et seq.* ("Sentencing Code"). The Ordinance applies to offenders subject to the

registration requirements of those provisions of the Sentencing Code collectively known as Megan's Law. *See* 42 Pa.C.S. §§ 9791–9792; 9795.1–9799.4; 9979.4–9979.9.[1] For the reasons that follow, we hold that the Ordinance impedes the accomplishment of the full objectives of the General Assembly, as expressed in the Sentencing and Parole Codes, and is, therefore, invalid pursuant to our conflict preemption doctrine.

Pennsylvania's current version of Megan's Law requires individuals convicted of, *inter alia*, kidnapping, indecent assault, or promoting prostitution, to register for ten years following release on probation or from prison. Persons convicted of two or more offenses subject to ten-year registration, sexually violent predators, and persons convicted of, *inter alia*, rape, involuntary deviate sexual intercourse, or aggravated indecent assault, are subject to lifetime registration upon release. 42 Pa.C.S. § 9795.1(a)-(b); *see* 42 Pa.C.S. § 9792 (defining "sexually violent predator"). In addition to requiring the registration of these offenders ("sex offenders" or "registrants"), the act also provides for notification of community members that such an offender will live in or near their neighborhood and mandates counseling for released sex offenders. 42 Pa.C.S. § 9791(b) (declaration of legislative policy). According to the General Assembly, Megan's Law facilitates community access to information regarding the presence in the neighborhood of sexually violent predators and other sex offenders, in recognition that these offenders pose a high risk to re-offend upon release and, thus, to endanger public safety. *See* 42 Pa.C.S. § 9791(a) (legislative findings). Safety of the public, according to the Legislature, is of "paramount concern." 42 Pa.C.S. § 9791(a)(3). A secondary interest is the effective operation of government. 42 Pa.C.S. § 9791(a)(5).

1. Acceptance of certification from the Third Circuit on a question of law is a matter of judicial discretion. Supreme Court I.O.P. § 10(B). Thus, we accept certification for "special and important reasons," including if the question of law at issue "is one of first impression and is of such substantial public importance as to require prompt and definitive resolution by this Court." *Id.* at § 10(B)(1).

Pursuant to Megan's Law, a registering sex offender must provide to the Pennsylvania State Police information regarding "all current or intended" residences, employment, and school enrollment. 42 Pa.C.S. § 9795.2(a). After the initial registration, the offender is to update the information within forty-eight hours of any change in the nature or location of residency, employment, or student status. *Id.* The State Police is charged with a duty to verify the residence of registered offenders either quarterly (for sexually violent predators) or annually (for other offenders). 42 Pa.C.S. § 9796. For every registrant, the State Police provides the information collected to local law enforcement officials where the registered offender resides, works, or is enrolled in school; the State Police also notifies the offender's victim(s) and makes information about the offender available on the Internet. 42 Pa.C.S. §§ 9795.2(c), 9797, 9798.1. Local law enforcement is responsible for notifying the public regarding the presence of a sexually violent predator in a community, as provided in 42 Pa.C.S. § 9798.[2]

The release from custody of a Megan's Law registrant is conducted pursuant to the provisions of the Pennsylvania Sentencing and Parole Codes, generally applicable to all offenders within the Commonwealth's jurisdiction. Sentencing courts and the Pennsylvania Board of Probation and Parole (the "Board") share duties of implementing the two statutes within their respective spheres.

In this context, the primary role of the court is to determine an appropriate sentence in each case, including confinement, probation, or intermediate punishment. A court must consider in selecting a sentence "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(a), (b). The sentencing

---

**2.** The General Assembly assigned to the State Police responsibility for the registration system's administration but charged courts with informing a sex offender of his/her obligation to supply the required data to the State Police, and the Pennsylvania Board of Probation and Parole with collecting the data from sex offenders prior to release, for entry into the system. 42 Pa.C.S. §§ 9799.1, 9795.3, 9799.2(2)-(3).

court may attach to probation reasonable conditions tailored to each offender. *See* 42 Pa.C.S. § 9754(c) (probation). For offenders who remain under the jurisdiction of the sentencing court, *see infra* n.3, the order of probation may be modified by the sentencing court at any time. 42 Pa.C.S. § 9771. Until termination of the sentence, probationers remain under the supervision of county probation and parole officers. 42 Pa.C.S. §§ 9911, 9912.

Within the same system, the Board's function is the administration of probation and parole in Pennsylvania. 61 Pa.C.S. § 6111(a). The Board operates the parole system with the primary purpose of protecting the public, but also with the twin goals of supplying an "opportunity for the offender to become a useful member of society" and of diverting appropriate offenders from prison. 61 Pa.C.S. § 6102(1)-(2). It must also "ensure that parole proceedings, release and recommitment are administered in an efficient and timely manner." 61 Pa.C.S. § 6102(3).[3]

The Board exercises discretionary parole authority, but must generally balance in making its decision the "best interests" of the offender which justify or require parole, and the interests of the Commonwealth that would be injured by the offender's release on parole. 61 Pa.C.S. § 6137(a).[4] For

---

3. The Board has "exclusive" power "[t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole" any persons sentenced to imprisonment in state or county correctional institutions for a maximum term of more than two years or any persons placed under Board supervision by a court; sentencing courts have residual authority to parole persons sentenced to a maximum of less than two years. 61 Pa.C.S. § 6132; 42 Pa.C.S. § 9776(a); *accord* 61 Pa.C.S. § 6134.1(c). Further, the Board supervises any person placed on probation by special order of the sentencing court. 61 Pa.C.S. § 6133(a). Otherwise, like probationers, parolees are supervised by county probation and parole officers. 42 Pa.C.S. § 9776. County probation and parole officers are subject to certain "uniform [s]tate-wide standards" established by the Board regarding qualifications, minimum salaries, and quality of services. 42 Pa.C.S. §§ 9756(b)(3), 9775, 9776(d), 9911; 61 Pa.C.S. § 6131(a)(5) (uniform standards); *accord* Timothy P. Wile, "County" parole, 12 WEST'S PA. PRAC., Law of Probation & Parole § 3:2 (2010 ed.).

4. According to the Parole Code, the Board and other paroling entities are also to consider parole guidelines articulated by the Pennsylvania

these purposes, the Board has a duty to investigate and consider the individual nature and circumstances of the offender and his offense, the victim's wishes, and recommendations from the sentencing judge and prosecuting attorney. 61 Pa.C.S. §§ 6134; 6135(a). The Parole Code requires that, if an offender is eligible for parole, the Board "shall approve" parole upon a determination that the offender's reentry plan is "adequate" and that there is no reasonable indication of the offender posing a risk to public safety. 61 Pa.C.S. § 6137(g)(4).

Probationers and parolees are subject to general and individual rules of conduct and supervision described at sentencing and/or in the parole agreement. *Wilson v. Marrow*, 917 A.2d 357, 363 (Pa.Cmwlth.2007); *see* 42 Pa.C.S. § 9754 (order of probation); 61 Pa.C.S. § 6141 (general and specific rules for parolees); 37 Pa.Code §§ 63.4–63.5; 65.4–65.6; 67.1–67.3 (conditions of parole). For probationers, the order at sentencing may incorporate conditions to "reside in a facility established for the instruction, recreation, or residence of persons on probation," to meet family responsibilities, to obtain employment, and to attend a drug rehabilitation program. 42 Pa.C.S. § 9754(c). The purpose of Section 9754 of the Sentencing Code is to "insure [sic] or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). Similarly, parolees must have their residence approved by the Board at release, live there, and not change residence without written permission from the parole supervision staff. 37 Pa.Code § 63.4(2). Other requirements include maintaining regular contact with supervisory staff, and refraining from violating

Commission on Sentencing. 61 Pa.C.S. §§ 6134.1(c), 6102(3); *see* 42 Pa.C.S. § 2154.5. The General Assembly tasked the Commission to adopt such guidelines in 2009. Act No. 81 of Sept. 25, 2008, P.L. 1026, § 4, effective in 60 days. But, the Commission has yet to publish guidelines, and the Board has utilized its own informal parole rules since at least 1981. Timothy P. Wile, Parole guidelines, 12 WEST'S PA. PRAC., Law of Probation & Parole § 8:13 (2010 ed.). *See, e.g.,* Appellees' Brief at 5 (citing Board's pamphlet *"State Parole and Parole Release Plans: What Inmates and their Families Need to Know,"* which provides restrictions on residency of sex offenders within two blocks of a playground, school, or day care facility).

criminal laws, from using or possessing illegal drugs, and from owning or possessing weapons. 37 Pa.Code §§ 63.4(3)-(5); 65.4(3)-(5).[5]

In this comprehensive legal context, the political subdivision at issue, Allegheny County (the "County") amended its County Code to add a new chapter entitled "Residence Requirements; Registered Sex Offenders," which became effective March 1, 2008. In relevant part, the Ordinance states:

> It shall be unlawful for any Sex Offender to establish a Permanent Residence or Temporary Residence within 2,500 feet of any Child Care Facility, Community Center, Public Park or Recreational Facility, or School for the duration of his or her registration under the terms of Megan's Law, 42 P[a.C.]S. § 9791 *et seq.*

Ordinance § 275–02(A) (Residency Restriction/Prohibition). "Sex Offender" is defined to include all Megan's Law registrants. Ordinance § 275–01 (definitions). According to the Ordinance, upon determining that a Megan's Law registrant resides within the prohibited area, s/he will be notified of the violation and will have forty-five (45) days to move from his or her residence to a new location, which complies with § 275–02(A). Ordinance § 275–03(A)–(B). With limited exceptions, each day beyond the forty-five (45) day grace period that the sex offender resides in a prohibited location constitutes a separate violation of the Ordinance. Ordinance § 275–03(C); § 275–04 (exceptions); § 275–05 (exemptions). Violation of the Ordinance constitutes a summary offense subject to a maximum term of imprisonment of forty-five (45) days and a fine of up to $500, plus the costs of prosecution. Ordinance § 275–07 (penalties). According to the County, the purpose of the Ordinance is "to augment the provisions of Pennsylvania's Megan's Law and [to] better provide for safety of the County's residents."

---

5. The Board's regulations also provide that the released offender must "[c]omply with municipal, county, State and Federal criminal statutes, as well as the Vehicle Code and the Liquor Code." 37 Pa.Code §§ 63.4(4); 65.4(4).

In adopting the Ordinance, the Allegheny County Council made several legislative findings based on a 2007 report of the Pennsylvania Attorney General regarding Megan's Law compliance, a 2003 U.S. Department of Justice publication on sex offender recidivism, and similar reports from sister states. The Council also noted that Allegheny County was joining many other municipalities to adopt sex offender residency restrictions. "White Oak Borough became the first of the over 130 municipalities within Allegheny County to pass a residency restriction within the last six months, and it appears that other municipalities are considering the possibility as well." Ordinance Preamble.

In relation to the Ordinance, the County published a map depicting the restrictions on residency imposed by the Ordinance. According to the district court's unchallenged finding, "the vast majority of Allegheny County falls within the restricted zone, with permissible areas generally confined to outlying, suburban communities such as Sewickley Heights, Bell Acres, South Fayette, Collier, and West Deer. The map does not indicate the topography of the permissible areas, nor whether residential housing is permitted or available in them." *Fross v. County of Allegheny*, 612 F.Supp.2d 651, 653 (W.D.Pa.2009).

Appellees Charles Fross, Shawn Czerwien, Charles Meter, Christopher Haigh, and two unidentified parties ("appellees") are all convicted sex offenders subject to the registration requirements of Megan's Law and the residency restrictions of the Ordinance. On October 6, 2008, appellees filed suit in federal court against Allegheny County, challenging the Ordinance on both federal and state law grounds. In relevant part, appellees asserted that the Ordinance was preempted by the Sentencing Code and the precursor to the current Parole Code, and requested a declaration that the Ordinance was invalid, an order enjoining enforcement of the Ordinance, and payment of litigation costs and attorneys' fees.[6] The County

6. At the time appellees filed their federal action, probation and parole in Pennsylvania were governed by Act 323 of August 6, 1941, P.L. 861, *as amended.* 61 P.S. §§ 331.1–331.34a. That act was repealed and

responded that the Ordinance was a permissible exercise of its powers and valid.[7]

The Honorable Gary L. Lancaster of the U.S. District Court for the Western District of Pennsylvania consolidated appellees' requests for preliminary and merits relief, and directed the parties to file cross-motions for summary judgment addressing only the state law preemption issue. On March 20, 2009, Judge Lancaster granted appellees' motion for summary judgment, holding that the Ordinance was invalid pursuant to the doctrine of conflict preemption. *Fross,* 612 F.Supp.2d at 660.

The federal district court agreed with appellees and concluded that the Ordinance was "an obstacle" to fulfilling the "full purposes and objectives" of Megan's Law and of the repealed precursor to the Parole Code. *Fross,* 612 F.Supp.2d at 658. According to the court, the Ordinance forbade what state law allowed and, therefore, conflicted with state law "in terms of both policy and operational effect." *Id.* The court based its conclusions on findings: (1) that "[r]ehabilitation and reintegration depend on the creation and maintenance of a stable environment and support system, close to family ties, employment, and treatment options;" (2) that the Board denied the release on parole of "many" eligible offenders because housing compliant with the Ordinance was not available; and (3) that a sex offender seeking parole and approval of a "home plan" in Allegheny County was subject to a different standard for release than similarly situated offenders in other parts of the Commonwealth. *Id.* at 658–69 (citing *G.H. v. Twp. of Galloway,* 401 N.J.Super. 392, 951 A.2d 221, 236 (2008) (local sex offender residency ordinance preempted because New Jersey Legislature intended to exclusively regulate field)). The district court noted that, currently, the Board's statewide policy is to reject the home plan of a sex offender whose victim

essentially reenacted in August 2009. *See* 61 Pa.C.S. § 101 Historical & Statutory Notes.

7. The County agreed to delay enforcement of the Ordinance pending resolution of this case. Independently, however, the Board apparently has been requiring that residency plans comply with the Ordinance. *See Fross,* 612 F.Supp.2d at 652 n. 1.

was a minor if the proposed residence was located within "two blocks" of a school, day care center, or playground. But, the Allegheny County Ordinance adopted a residency restriction which applied to all offenders, regardless of whether the victim was a minor, and within a radius of 2,500 feet from any school, public park, community or recreational center, and child care facility. *Id.* at 658. Judge Lancaster concluded that, by placing strict restrictions on where sex offenders could reside, essentially prohibiting any sex offender from living throughout most of Allegheny County, the Ordinance directly interfered with the goals of the Parole Code's precursor, namely inmate rehabilitation and reintegration, avoidance of unnecessary incarceration, and the establishment of a uniform system of supervising persons on parole and probation. According to the court, "[t]he conflict with state law is evident: where the state has decided that the offender is ready to return to his community, the County has placed a nearly insurmountable obstacle in the way of that return." *Id.* at 659.

The district court also underscored that the Ordinance was likely to have ramifications throughout the state as neighboring communities reacted to a real or perceived influx of "undesirable residents." *Id.* at 660. According to Judge Lancaster, the Ordinance and similar local regulations interfere with the proper functioning of the Board and courts, and cumulatively could prevent the effective operation of the Commonwealth's probation and parole system. *Id.* Ultimately, the district court found that the Ordinance was invalid and unenforceable.[8]

The County appealed. In January 2010, a panel of the Third Circuit referred the case for review to this Court, by petitioning for certification of the following legal question involving Pennsylvania law:

**8.** The district court rejected appellees' alternative field preemption theory as inapplicable on the ground that this Court, to date, has only recognized a legislative intent to fully preempt local legislation in three areas: alcoholic beverages, banking, and anthracite mining. 612 F.Supp.2d at 654–55.

Is Allegheny County Ordinance No. 39–07–[OR] entitled "Residence Requirements; Registered Sex Offenders" preempted by Pennsylvania statutory law and the procedures of the Pennsylvania Board of Probation and Parole?

Petition for Certification at 15. The panel offered no opinion on whether it agreed with the district court's preemption conclusions. Third Cir. Op. at 11. On June 3, 2010, this Court granted the Petition for Certification.

In its brief to this Court, the County argues that we should reject appellees' various theories of preemption and find the Ordinance valid.[9] The County emphasizes its status as a home rule county, whose locally-tailored legislation is entitled to deference. The County claims that the Ordinance conflicts neither with Megan's Law nor with the Parole Code. According to the County, the Ordinance shares with the two statewide acts the goal of protecting public safety, albeit by different means specific to the necessities and concerns of Allegheny County. Thus, the County argues that the Ordinance regulates where sex offenders may reside, a subject different from the concerns of Megan's Law-registration and public notification. County's Brief at 22 (quoting *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 973 (2003)) (Megan's Law does "not significantly restrain registrants, who remain 'free to live where they choose, come and go as they please, and seek whatever employment they may desire.'"). Similarly, with respect to the Parole Code, the County claims that there is no conflict arising from the Ordinance because, although the Parole Code grants the Board exclusive power over parole decisions and seeks to establish a uniform statewide system of parole through detailed regulation, by its plain language, the Ordinance does not seek "to regulate or intrude upon" these prerogatives. County's Brief at 25 (citing 61 P.S. § 331.17).

9. Although the question certified by the U.S. Court of Appeals for the Third Circuit concerns the effect of the current legislative scheme on the Ordinance, the County has inexplicably referenced the repealed act in its arguments. We, of course, answer only the question properly before us, the question certified by the Third Circuit.

The County also asserts that the parole legislative scheme and the Board's regulations generally cannot trump the well-established right of municipalities to adopt local laws regarding the health, safety, and welfare of their residents. *Id.* at 28 (citing 37 Pa.Code § 63.4(4)) (offender must comply with municipal and county criminal statutes); *Commonwealth v. Ogontz Area Neighbors Ass'n,* 505 Pa. 614, 483 A.2d 448 (1984) (*"Ogontz"*) (state agency must conform to local zoning scheme). Finally, the County concludes that the Ordinance should be upheld as a mere supplement to existing statutes and as a valid exercise of the County's legislative power. According to the County, because the Ordinance is a valid County Council action in response to a recognized health and safety concern, we should direct the Board to operate within the regulatory environment created by the Ordinance.

Appellees, however, urge this Court to find that the Ordinance interferes with the purposes of the General Assembly in adopting Megan's Law and the Parole Code and, therefore, that it is invalid pursuant to the conflict preemption doctrine. Appellees emphasize that the supervision of sex offenders on probation and parole is highly regulated in Pennsylvania through comprehensive and detailed statutes. According to appellees, Megan's Law, "expressly contemplates residency by sex offenders within residential neighborhoods and proximate to schools and day care facilities following assessment and with monitoring, treatment[,] and notification." Appellees' Brief at 26. The release into the community of sex offenders is based on individualized assessments by criminal justice and mental health professionals, and is controlled down to "every aspect of [the offenders'] existence, including specifically where they may or may not live." Appellees' Brief at 17, 25.[10] The Board's policy is to prohibit sex offenders whose victims were minors from living within two blocks of the same schools

<hr/>

**10.** The Association for the Treatment of Sexual Abusers ("ATSA") filed an *amicus curiae* brief on behalf of appellees. ATSA essentially reasserts appellees' arguments, claiming among other things that residency of offenders is a critical matter in probation and parole decisions, with which individuals counties should not be permitted to interfere. ATSA Brief at 11, 14.

and day care centers; but, the County created a restriction that vastly exceeds in scope the Board's prohibition. According to appellees, the County usurps the Board's power to approve a sex offender's residence by essentially excluding all sex offenders from Allegheny County and thus limiting the discretion of courts and of the Board in sentencing and paroling, or in exempting a sex offender from notification requirements where appropriate. According to appellees, the Ordinance essentially prohibits residency in areas of Allegheny County that state law allows and "unduly" restricts the liberty of sex offenders on parole. Appellees claim the Ordinance is a blunt instrument that fails to take into account individual circumstances and the professional judgment of experts who assess individual sex offenders and their residency requirements.

Moreover, appellees argue that the Ordinance thwarts the express purposes of the Sentencing and Parole Codes to ensure public safety, the rehabilitation and integration of sex offenders in the community, and a reduction in the prison population. Appellees note that greater access to treatment, employment, family, and other familiar community supports are generally identified with a decreased risk of recidivism and successful rehabilitation and reintegration of sex offenders into the community. But, the Ordinance deprives sex offenders seeking to return to Allegheny County of these advantages by "single-mindedly focusing on excluding sex offenders from living in the most habitable portions of the County." Appellees' Brief at 29 (citing 61 Pa.C.S. § 6102(1)). Appellees conclude that, although allegedly intended to reinforce the Commonwealth's objective of ensuring public safety, the Ordinance in actuality has the opposite effect. *Id.* at 31 (citing *G.H.*, 951 A.2d at 236). According to appellees, the Ordinance conflicts with both the ameliorative approach of the General Assembly and its goal of protecting the public. Further, by blocking efforts to release and reintegrate sex offenders into the community, the Ordinance interferes with the Board's duty to divert appropriate offenders from prison and to admin-

ister parole release "in an efficient and timely manner." *Id.* (citing 61 Pa.C.S. § 6102(3)).

Finally, appellees contend that the Ordinance is not legislation legitimately targeted toward specific local concerns and they reject any suggestion that, pursuant to *Ogontz, supra,* the Ordinance is not subject to preemption. *Id.* at 21, 27–28 (citing *G.H.,* 951 A.2d at 226; *City of Northglenn v. Ibarra,* 62 P.3d 151, 156 (Colo.2003))(local ordinance preempted because "state's interest in fulfilling its statutory obligations to place and supervise delinquent children in state-created foster care families in a uniform manner overrides any city interest in regulating land uses"). Appellees also insist that the Board did not relinquish any statutory authority by adopting Regulation 63.4(4), which directs parolees to comply with municipal and county criminal codes. According to appellees, the Ordinance is a local public safety regulation inconsistent with the comprehensive state legislative scheme and it is, therefore, invalid. *Id.* at 33–34 (citing *Range Res.–Appalachia, LLC v. Salem Twp.,* 600 Pa. 231, 964 A.2d 869 (2009)).[11]

11. The parties also argue, and disagree on, whether the Ordinance is invalid pursuant to the field preemption doctrine. Thus, appellees argue that the general tenor of the Parole Code reflects a legislative intention that it should not be supplemented at a local level. According to appellees, the General Assembly directed the Board to promulgate regulations establishing "uniform Statewide standards" for supervision of probationers governing every aspect of an offender's life, including residency, and provided the Board "exclusive power" over the parole system. Appellees also emphasize a "special need for uniformity" in the areas of probation and parole. In response, the County argues that there is no precedent for finding field preemption with respect to the regulation of probation and parole, and that this Court has only recognized field preemption with respect to regulation of alcoholic beverages, banking, and anthracite mining. Because we conclude that the Ordinance is preempted pursuant to the conflict preemption doctrine—which was the ground for decision of the District Court—we do not reach the issue of field preemption and express no opinion as to its operation here.

Similarly, we decline the invitation to decide the County's claim that, because the Ordinance is not preempted, this Court must view it "under rational basis" review. According to the County, the Ordinance is an appropriate exercise of the County's police powers in response to the safety and health risk that sex offenders pose to the public at large. County's Brief at 32 (citing *Conn. Dep't of Public Safety v. Doe,* 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003)). To the extent that this

█ The application of the doctrine of preemption to invalidate Allegheny County's Ordinance raises a pure question of law. Our review of a question of law certified by the U.S. Court of Appeals for the Third Circuit is plenary. *Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP,* 605 Pa. 269, 989 A.2d 313, 327 (2010).

█ Pennsylvania counties are creations of the state with no powers of their own, except those powers expressly granted to them by the Constitution of the Commonwealth or by the General Assembly, and other authority implicitly necessary to carry into effect those express powers. *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855, 862 (2009) (*"Huntley "*) (citing *City of Phila. v. Schweiker,* 579 Pa. 591, 858 A.2d 75, 84 (2004)). Pursuant to the Constitution, counties may frame and adopt home rule charters. PA. CONST. Art. IX, § 2 (municipalities may adopt home rule), § 14 (municipality includes county). Any county which has adopted a home rule charter has the general authority to adopt ordinances "as may be required" and "may exercise any power and perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." PA. CONST. Art. IX, § 2; 53 Pa.C.S. § 2961 (general powers of home rule municipalities), § 2901 (part applies to all municipalities except Philadelphia).

█ Although liberally construed in favor of the county, the grant of power to a home rule county is not absolute. *Holt's Cigar Co. v. City of Phila.,* 10 A.3d 902, 907–08 (Pa. 2011) (*"Holt's "*); *Nutter v. Dougherty,* 595 Pa. 340, 938 A.2d 401, 411 (2007); *see* 53 Pa.C.S. § 2961. Acts of the General Assembly may circumscribe, either expressly or impliedly, the power of a home rule county to legislate in a particular arena, which may give rise to conflicts between local and statewide legislation. 53 Pa.C.S. § 2961 (county to exercise power not denied "by statute"). The preemption doctrine has developed

argument regarding the constitutionality of the Ordinance is developed, it is not within the scope of our certification order and we will not address it.

to establish "a priority between potentially conflicting laws enacted by various levels of government." *Huntley*, 964 A.2d at 862. Preemption may be express or implied, in the form of field or conflict preemption. *Nutter*, 938 A.2d at 411.

This Court recently addressed the doctrine of conflict preemption in *Holt's*. Although sharply divided on the outcome, the entire Court agreed that a local ordinance is invalid if it stands "as an obstacle to the execution of the full purposes and objectives" of the General Assembly, as expressed in a state law. *Holt's*, 10 A.3d at 907; *accord id.* at 917 (Castille, C.J., joined by Todd, J. and Orie Melvin, J., dissenting).[12] To determine whether the county has created such an obstacle, we assess the effect of the challenged ordinance on the proper functioning and application of the state enactment. *See Holt's*, 10 A.3d at 907; *accord Cellucci v. Gen. Motors Corp.*, 550 Pa. 407, 706 A.2d 806, 810 (1998) (federal preemption case; "stands as an obstacle" means state law interference with "methods" by which federal statute was designed to reach its goal) (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987)). If the local ordinance impedes the operation of the state statute, the ordinance is preempted. County legislation tailored to the particular locality is permitted, if the enactment merely aids and furthers the goals of the state statute. *Holt's*, 10 A.3d at 907 (quoting *Mars Emergency Med. Servs., Inc. v. Twp. of Adams*, 559 Pa. 309, 740 A.2d 193, 195 (1999) ("*Mars EMS* ")); *id.* at 918 (Castille, C.J., joined by Todd, J. and Orie Melvin, J., dissenting) (same). But, "local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." *Huntley*, 964 A.2d at 862; *see Mars EMS*, 740 A.2d at 195 (local ordinance is invalid to extent it contradicts or is inconsistent with state statute).

12. A local ordinance may also be preempted if it is in direct and irreconcilable conflict with a state enactment, *i.e.,* if simultaneous compliance with both the local and state enactments is impossible. *See, e.g., Mazzo v. Bd. of Pensions & Retirement*, 531 Pa. 78, 611 A.2d 193, 195–97 (1992) (invalidating ordinance that inserted additional requirement and prohibited reinstatement of pension benefits on conditions devised by state).

██ The parties agree here that neither the Sentencing Code nor the Parole Code expressly prohibits the County from adopting ordinances with respect to released sex offenders. Further, there is no dispute that the County's authority to adopt local legislation must be liberally construed. But, even construed in the most liberal light, the Ordinance here clearly interferes with the statewide operation of the Sentencing and Parole Codes and with the General Assembly's policies in these arenas.

██ The General Assembly has expressly listed among its purposes for adopting the Sentencing and Parole Codes the rehabilitation, reintegration, and diversion from prison of appropriate offenders. *See* 42 Pa.C.S. §§ 9721(b) (court to consider rehabilitative needs of defendant in determining sentence); 9754(c) (court to impose conditions of probation that assist defendant in leading law-abiding life); 61 Pa.C.S. § 6102(1); *accord Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("Society has a stake in whatever may be the chance of restoring [a parolee] to normal and useful life within the law."); *Commonwealth v. Walton,* 483 Pa. 588, 397 A.2d 1179, 1184 (1979) ("conditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen"); *Commonwealth v. Basinger,* 982 A.2d 121, 128 (Pa.Super.2009) (conditions of probation "must be constructive measures directed at rehabilitation through behavioral modification"). The General Assembly has made a determination that Megan's Law registrants/sex offenders, as a class, are eligible for parole and may benefit from these Commonwealth policies. *See* 61 Pa.C.S. § 6137(a)(1) (subject to conditions, Board may release on parole any inmate except "inmate condemned to death or serving life imprisonment"); *accord Poulson v. Pa. Bd. of Prob. & Parole,* 610 Pa. 394, 20 A.3d 1178, 1182 (2011) (*per curiam* ); *see, e.g., Nieves v. Bd. of Prob. & Parole,* 995 A.2d 412 (Pa.Cmwlth.2010). The primary means of implementing this policy is to offer released sex offenders, like other offend-

ers, familiar and stable environments, *i.e.,* promote family and community ties, and provide access to employment, counseling, and supervision. 42 Pa.C.S. § 9754(c); 37 Pa.Code § 63.1(d); *see, e.g., Worthington v. Bd. of Prob. & Parole,* 784 A.2d 275, 276 (Pa.Cmwlth.2001) (parolee released to community corrections center "for a minimum period of six months and until his home, employment and drug/alcohol treatment stabilized"); *Commonwealth v. Sharpe,* 445 Pa.Super. 419, 665 A.2d 1194, 1196–97 (1995) (probation was conditional "upon [probationer] living with his brother, obtaining employment and attending a drug treatment program"); *McCauley v. Bd. of Prob. & Parole,* 98 Pa.Cmwlth. 28, 510 A.2d 877, 879 nn. 4–7 (1986) (parolee's conditions for release included attending marriage counseling, drug and alcohol abuse therapy, weekly notifications to parole office of employment status, living at address approved by Board, and regularly reporting to parole officer).

The Ordinance fails to acknowledge, and effectively subverts, these goals of the General Assembly. The Ordinance banishes many sex offenders from their pre-adjudication neighborhoods and support systems. The Ordinance also consigns all offenders to isolated suburban areas of Allegheny County that presumably will provide less access to transportation, employment, counseling, and supervision. Moreover, it is not even apparent, from the record provided, whether there is appropriate residential housing available in the areas to which registrants would be banished; what we do know is that those areas, even if residential, are isolated from other aspects of most residential communities, such as parks and community and recreation centers. The Ordinance appears to attempt to ensure public safety, in certain parts of Allegheny County, by isolating all Megan's Law registrants in localized penal colonies of sorts, without any consideration of the General Assembly's policies of rehabilitation and reintegration.

In formulating its Ordinance, the County also disregarded the General Assembly's preference for balancing the best interests of the public and of the offender with respect to the offender's release on probation or parole. Although public

safety may be the weightier issue in the calculation of the General Assembly, *see* 42 Pa.C.S. § 9791(a)(2) and 61 Pa.C.S. § 6102(2), it is not preferred to the exclusion of all other interests which may be reasonably accommodated. *See Walton, supra.* Even Megan's Law, which addresses sex offenders specifically, does not single out these offenders for a heightened standard of release on probation or parole. The County, however, rejected any balancing approach in favor of a policy of exclusion and isolation.

The Ordinance also discounts the General Assembly's policy determination to facilitate diverting offenders from prison and the Commonwealth's interest in the timely and effective administration of probation and parole. *See* 42 Pa.C.S. § 9791(a)(5); 61 Pa.C.S. § 6102(1), (3). Thus, the County's residency restrictions limit the options available to sex offenders in designing adequate plans upon release for approval by sentencing courts or the Board. For example, a sex offender who has a strong family support structure in Pittsburgh may well have difficulty devising a plan for parole that would both meet the restrictions of the Ordinance and the Board's criteria for an adequate release plan. Considerations of whether the sex offender can meet family responsibilities and receive family support in return are often weighty in formulating a plan for release. These relationships contribute to emotional and financial stability, as family may assist the offender in seeking and maintaining employment and attending counseling. *See, e.g., Commonwealth v. Sheridan*, 348 Pa.Super. 574, 502 A.2d 694, 696 (1985) (in resentencing inmate to probation, trial court highlighted that: "(1) Appellee has a supportive family; (2) Appellee has an eight year old child, with special medical needs, to support; (5) Appellee's remorse for her involvement with drugs and her fear of losing custody of her child would act as deterrents to future misconduct.").

The added level of difficulty in devising adequate plans for release in this one County following the adoption of the Ordinance will likely equate to either probation or parole being granted under conditions less likely to maximize rehabilitation and reintegration potential, additional, and significant

delays in processing the release of eligible offenders, or a greater number of otherwise eligible offenders simply being denied parole. *See, e.g., Nieves,* 995 A.2d at 415 & n. 2 (Board may postpone release on parole pending available opening for residency at community corrections center, part of parolee's approved home plan). Where either probation or parole is granted, the placement of a large number of offenders in fewer and sparsely populated areas of a County is also likely to overtax available resources in those areas and decrease the quality of services. It cannot be seriously disputed that the Ordinance will interfere with the "efficient and timely" administration of the parole system and significantly affect the quality of the Commonwealth's probation and parole systems. *See* 61 Pa.C.S. §§ 6102(3); 6131(a)(5). These administrative deficiencies may well also produce an unintended effect of threatening public safety, by depriving sex offenders of access to resources which have been shown to reduce the risks of recidivism. The Ordinance, therefore, inhibits the accomplishment of the General Assembly's administrative policies in addition to its goals of rehabilitation and reintegration.

The Ordinance relatedly obstructs the operation of the Sentencing and Parole Codes in several respects. First, although acknowledging the high risk of recidivism among sex offenders, the General Assembly has generally rejected the option of simply excluding released offenders from entire communities as the primary or even preferable means of protecting the public. 42 Pa.C.S. § 9791(a)(2), (b). The General Assembly adopted instead a calibrated regulatory scheme of registration, notification, and counseling for sex offenders— Megan's Law. *See* 42 Pa.C.S. §§ 9795.1, 9795.2, 9797, 9798, 9798.1, 9799.4. Residency restrictions are not excluded but they play a far more limited role in the state's legislative scheme than in the scheme adopted by the Ordinance. Thus, the Board's guidelines prohibit a Megan's Law registrant whose victim was a minor from residing within two blocks from a school, playground, or day care center.

Generally, however, sentencing courts and the Board assess individual sex offenders (like all other offenders) regarding their suitability for probation or parole, and impose conditions

tailored to the offender. *See Walton*, 397 A.2d at 1184 (courts "are traditionally and properly invested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case"); *Sheridan*, 502 A.2d at 696 ("sentences must be imposed individually, taking into account not only the offense but the characteristics of the offender"); *see, e.g., Woodling v. Bd. of Prob. & Parole*, 113 Pa.Cmwlth. 310, 537 A.2d 89, 89 (1988) (sex offender whose victim was a minor was subject to condition of probation "that he not associate with minors (under age eighteen) who were not close relatives (first degree) without his parole agent's prior approval"). For example, a parolee's residency is subject to approval by the paroling entity; and probationers may be required to live in a facility established for probationers. 37 Pa.Code § 63.4(2); 42 Pa.C.S. § 9754(c)(5); *see, e.g., Worthington, supra*. The Ordinance, however, establishes a blanket prohibition against residency within 2,500 feet of "places where children congregate," on all Megan's Law registrants. Moreover, the Ordinance minimizes all Megan's Law registrants' contact with children, regardless of whether the offender's victim was a minor or the offender is determined to be a threat to minors. The Ordinance would thus obstruct the operation of the statewide statutory scheme by requiring courts and the Board to abandon the tailored and proportionate approach of the General Assembly and attempt to devise new approaches that would satisfy the County's wider-reaching restrictions. To stand down to the Ordinance, in essence, is to allow the County to "opt-out" of the statewide plan.

The County nonetheless would have it that the Ordinance, by its plain terms, neither interferes with the probation and parole systems of the Commonwealth nor touches upon the operative clauses of Megan's Law, which provide solely for the registration of sex offenders and public notification. The main thrust of the County's argument is that the Ordinance is an exercise of its home rule powers to devise legislation tailored to the public health, safety, and welfare of its inhabitants. According to the County, its Ordinance merely regulates where Megan's Law registrants may reside and "augments" the statute in response to local concerns. But, the County's

assessment is implausible. The County's legislative findings merely amount to a reiteration of the General Assembly's conclusions in relation to Megan's Law supplemented by various generalized references to national, statewide, and out-of-state (*i.e.*, Minnesota and Arizona) studies, none of which identify Allegheny County-specific concerns. In this instance, the General Assembly has already weighed in on the policy priorities of the Commonwealth with respect to the reintegration of offenders, including sex offenders, and has devised an approach for how to best accomplish them. The County reveals no countervailing local concerns to justify its attempt to opt-out of the General Assembly's overall scheme of balancing public safety and the offenders' best interests, from its policies of rehabilitation, reintegration, and diversion from prison, or from the means by which the Legislature sought to promote these policies.

Moreover, the County fails to articulate a cogent argument to support its claim that the Ordinance somehow "aid[s] and further[s]" the public safety goal of Megan's Law. Thus, the County provides no explanation why broad exclusions of sex offenders from population centers are preferable, in Allegheny County, to the statewide individually-tailored residency plus registration—notification—counseling requirements of the General Assembly. *See, e.g., Dep't of Licenses & Inspections v. Weber*, 394 Pa. 466, 147 A.2d 326 (1959) (stricter regulation of beauty salons in Philadelphia appropriate because ensuring "health, safety, welfare, and comfort of dwellers in urban centers" posed special challenges compared to rest of state). Indeed, similarly to the district court, we are persuaded by the appellees' arguments that the County's Ordinance interferes with the goal of Megan's Law to reduce recidivism among sex offenders and improve public safety. Isolating all sex offenders from their communities, support systems, employment, and treatment is an approach contrary to that of the General Assembly, which requires individually tailored assessments and assistance with rehabilitation and reintegration for appropriate offenders. The Ordinance chooses the importance of residency over all other considerations expressly incorporated into the probation and parole

scheme by the General Assembly. And, finally, it is not hard to imagine the effect on the statewide legislative scheme if all counties were to adopt similar residency restrictions. The statewide scheme would be eviscerated.[13]

The County's legislative effort in this instance undermines the General Assembly's policies of rehabilitation, reintegration, and diversion from prison of appropriate offenders, and significantly interferes with the operation of the Sentencing and Parole Codes. For these reasons, we agree with the federal district court that the County's Ordinance stands as an obstacle to accomplishing the full purposes objectives of the General Assembly and is, therefore, preempted.

Question answered, jurisdiction relinquished.

Justices SAYLOR, EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.

13. We also reject the County's secondary argument premised on the notion that parole regulations require offenders to abide by local ordinances. County's Brief at 28–29 (citing 37 Pa.Code § 63.4(4)). Regulation 63.4(4) states that if parole is granted, the parolee shall "[c]omply with municipal, county, State and Federal criminal statutes, as well as the Vehicle Code and the Liquor Code." The County suggests that the regulation gives the Ordinance validity by recognizing that the Board does not have "blanket authority to override validly enacted local laws dealing with local health, safety and welfare." *Id.* at 28 (citing *Ogontz*, 483 A.2d 448). Setting aside the issue of whether the Ordinance is criminal legislation (and also any *Apprendi* concerns), the County's argument is not persuasive. *See Commonwealth v. Lee*, 594 Pa. 266, 935 A.2d 865, 873 (2007) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (statutory scheme that is punitive in purpose or effect entitles defendant to full panoply of due process protections)). In *Ogontz*, this Court held that a Commonwealth agency was permitted to acquire property but the agency's use of the property as a mental health facility was subject to the municipality's zoning ordinance. *Ogontz*, 483 A.2d at 455. The Court explained that the contest in *Ogontz* was "between two [equal] instrumentalities of the state," the Commonwealth agency and a home rule municipality. *Id.* at 452. Here, however, the direct conflict is between the General Assembly's acts and a County ordinance, between which, the statewide enactments must prevail. *See Holt's*, 10 A.3d at 907. Even if we were to assume that the Board's regulation intended to, and could, vest counties with greater powers than those legislatively granted, a county has no authority to exercise its power contrary to the policy and operational imperatives of the General Assembly. *See Cellucci*, 706 A.2d at 810; 53 Pa.C.S. § 2961.